BOZENA GROTTE, APPELLEE, V. HARRY RACHMAN ET AL., APPELLANTS.

FILED JANUARY 23, 1926.   No. 23662.

1. **Statute of Frauds:** SALE OF STOCK. "A cash sale of stock upon an agreement whereby the seller undertakes to repurchase at the buyer's option constitutes an entire and indivisible transaction sufficiently performed to take it out of the statute of frauds, though the agreement to repurchase be oral." *Stratbucker v. Bankers Realty Investment Co.,* 107 Neb. 194.

2. ———. "A contract not to be performed within one year, as

meant by the statute of frauds, is one which by its terms cannot be performed within one year. A contract is not within the statute merely because it may or probably will not be performed within a year." *Carter White Lead Co. v. Kinlin,* 47 Neb. 409.

3. Corporations: SALE OF STOCK: AGREEMENT TO REPURCHASE. Where, as in this case, plaintiff was induced to purchase stock in a corporation by the promise of defendants to repurchase such stock from her with interest, upon demand, at any time she needed the money, the time elapsing between the date of such purchase and demand is not controlling; it is the need for the money that exacts fulfilment of such promise.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Gaines, Van Orsdel & Gaines* and *Eugene N. Blazer,* for appellants.

*Benjamin S. Baker* and *James E. Rait, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

THOMPSON, J.

This action was commenced in the district court for Douglas county to recover $11,000 with interest at 7 per cent. per annum from June 10, 1919. Plaintiff contends that on or about such date she was the owner and holder of stock in the Burgess Nash Company, a corporation of Douglas county, of the par value of $11,000; that she and defendants were, and had been for some years, close personal friends; that she was without business knowledge, and relied solely on the representations of defendants; that they promised her that, if she would turn the Burgess Nash stock over to them and accept in lieu thereof stock in Stroud & Company of the same face value, of which company defendants were acting as agents for the sale of stock, they would, at any time that plaintiff needed the money, upon demand being made, repurchase from her the Stroud stock at its face value, with 7 per cent. interest

from June 10, 1919; that, relying upon such promise, she delivered to them the Burgess Nash stock and received stock in Stroud & Company of the same face value; that thereafter she offered, and now offers, to return the Stroud stock, and has demanded, and now demands, the $11,000 with interest, as agreed, but defendants refuse to accept the stock and pay her.

To this, defendants interpose, quoting from their brief: "(1) A general denial. (2) An oral agreement to repurchase the stock in controversy would be void under the statute of frauds. (3) The plaintiff made no request or demand of the defendants to repurchase the stock until the date of filing the petition, to wit, January 16, 1923, and hence it is too late for her now to assert any claim against defendants for the repurchase of the stock in controversy." Plaintiff denied the allegations, above quoted, in her reply.

Trial was had to a jury, which rendered a verdict in favor of plaintiff for the full amount claimed, less dividends paid, and interest thereon from date of payment to date of verdict. Judgment was entered accordingly, to reverse which defendants appeal, challenging such judgment for the following reasons: The court erred in giving instruction No. 4 on its own motion; the court erred in overruling defendants' motion for an instructed verdict.

Defendants complain of instruction No. 4 for the reason that, as the Burgess Nash stock was sold by them for $10,172.80, the jury should have been told that this sum, and not $11,000, the face value thereof, should form the basis of her recovery, if any. This conclusion is not warranted by the facts. Plaintiff did not sell this stock but turned it over to defendants at its face value for a like amount, face value, of the Stroud & Company stock, under an agreement that defendants would pay her, when needed by her, the face value of such stock with interest.

The jury having passed on the questions of fact involved favorable to plaintiff, and there being sufficient competent evidence to support their findings, we are called upon to determine but two other questions, to wit: Was the oral

agreement to repurchase the Stroud stock void under our statute of frauds? If not, did plaintiff lose her right by failing to make demand for such repurchase for three and a half years?

Taking up these questions in their order, it will be seen that such promise to purchase the Stroud stock from plaintiff entered into and became a potent factor in the making of the contract, and was an inseparable part of the consideration moving from defendants to plaintiff. Plaintiff paid full consideration at the time. As to her the contract was complete. Thus, under our holdings in *Fremont Carriage Mfg. Co. v. Thomsen*, 65 Neb. 370, and *Griffin v. Bankers Realty Investment Co.*, 105 Neb. 419, the transaction was not within the statute of frauds. In the latter case we adopted the rule announced in *Hankwitz v. Barrett*, 128 N. W. 430 (143 Wis. 639): "The sale and delivery of stock and payment of the price, under a contract whereby the seller agreed to repurchase at the buyer's option, constituted an entire transaction which was sufficiently performed to take it out of the statute of frauds, relating to contracts for the sale of goods, though the agreement to repurchase was oral." This rule was followed in *Stratbucker v. Bankers Realty Investment Co.*, 107 Neb. 194.

Then, it will be further noticed that this contract does not limit the time within which plaintiff might make this demand; therefore, it might be within one year, and thus it would come within our holding in *Carter White Lead Co. v. Kinlin*, 47 Neb. 409:

"A contract not to be performed within one year, as meant by the statute of frauds, is one which by its terms cannot be performed within one year. A contract is not within the statute merely because it may or probably will not be performed within a year."

As to the second issue, defendants urge by way of their brief, as well as in oral argument, that, as the contract fixed no definite date within which plaintiff might demand repurchase by them, she had but a reasonable time in which to do so; that as she made no demand for three and a half

years after she purchased the stock, she did not act within a reasonable time, and for that reason must fail in this action.

One buying stock in a corporation, or any other property, has a right to that which he buys and pays for; that is, he is entitled to the full consideration passing to him. Where, as in this case, one parts with her property in consideration that the other party will take back the property purchased, and pay in cash therefor to the extent of the full face value, at any time that the purchaser needs the money, she is in law, as well as in good conscience, entitled to the complete fulfilment of the contract. The length of time elapsing between the time of sale and the demand of the purchase price and interest is immaterial, except as it may be considered with other evidence in determining the good faith and intention of the parties. Such a contract is not against public policy. Good faith is demanded, and the burden is on the plaintiff to prove the existence of the condition, if such there is in the contract. This condition must not be fanciful, or created for the purpose of securing such repurchase. It must be real, and if so found, as in this case, she is entitled to the fruits of her contract. To hold otherwise would be to deny to plaintiff an inducing factor for her contracting.

At the time this contract was made plaintiff was a resident of California, and has so remained. Defendants were residents of Omaha, and have been ever since, and were financially well to do. The Burgess Nash stock was at this time what is know as "gilt edged," and was so known by each of the parties. The character of the Stroud stock was known to defendants but not to plaintiff. Her ignorance thereof was also known to defendants and they solicited her to make the purchase while she was temporarily in Omaha. She first told them that she was without money, and also without property of moment except the Burgess Nash stock, which she said she knew to be good, and which she could convert into cash whenever she needed it. To this defendants answered, in substance, that securing cash need not worry her,

Grotte v. Rachman.

for if she would turn the Burgess Nash stock over to them they would sell it and turn over to her $11,000 face value of the Stroud stock, and if at any time she needed money they would take such stock and pay the face value thereof, with 7 per cent. interest from its face date. Relying on this she turned over to them her stock and received in lieu thereof seven certificates of stock in Stroud & Company, in the following denominations: Four for 20 shares each, with a face value of $2,000 each; three for 10 shares each, face value $1,000. As these were handed to plaintiff by defendants, one of them, in the presence of the other, said that they had placed her stock in seven certificates so it would be easier for her to convert them into cash, as all she would have to do would be to enclose such certificates as would cover the amount of money needed in a letter, send same to them, on receipt of which they would send her the face value in cash. This, of itself, shows that as to when she needed money, time and conditions must determine. It appears from the evidence that she had not needed money until just prior to the commencement of this action when she purchased property in California, as she says, on the strength of this contract with defendants, and immediately tendered the stock to them and demanded payment, which was refused. This action was then instituted.

The privilege of selling her stock to defendants at any time she needed the money was a material and inseparable part of the contract. She paid for such privilege, and is, under this record, entitled to it. In this conclusion we are supported by our holding in *Fremont Carriage Mfg. Co. v. Thomsen, supra,* that where such a contract was based on the condition that, if the vendor of the stock discharged or ceased to employ the purchaser thereof, the former would pay the latter the face value of stock purchased by him, the contract having been entered into on February 1, 1894, breached September 4, 1897, and suit brought on February 6, 1899, the purchaser was entitled to recover, notwithstanding that the time he was to be employed was without limitation. The condition, "when he was discharg-

ed," was the one which was held to mature the right to demand the purchase price. In the instant case, it was when "she needed the money." In principle there is no distinction between the two cases.

Then, as said in the opinion in *Armstrong v. Orler*, 220 Mass. 112: "But the agreement found by the judge to have been made by the defendant was not an agreement to take back upon the plaintiff's being dissatisfied with the purchase, but was an absolute agreement that he 'would buy back from the plaintiff these stocks and bonds at any time he (plaintiff) desires to return the same.'"

In the course of the opinion in *Kincaid v. Overshiner*, 171 Ill. App. 37, it is said: "It is too late now for defendants to undertake to seek a new agreement; they did not limit the time when performance should be demanded by plaintiff but agreed to purchase it *at any time*. The court cannot alter the terms or conditions of the agreement as made."

Error was not committed in overruling defendants' motion for an instructed verdict, or in the application of the law to the facts. The judgment of the district court is

AFFIRMED.

Note—See (1, 2) 27 C. J. secs. 86, 96, 253.