EDWIN B. HELLER, APPELLEE, v. HERMAN SPEIER, APPELLANT.

FILED MAY 23, 1930. No. 27085.

*Frank A. Peterson, Charles F. Adams, Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg,* for appellant.

*Sanden, Anderson, Laughlin & Gradwohl, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

This action for damages was brought by appellee against appellant, president of Speier's, incorporated, upon a certain contract in writing which provided for the repurchase of stock in said company by appellant from appellee should appellee leave the company's employ. Appellee's employment, by mutual agreement of the parties,

terminated on April 28, 1928, and this suit was brought to recover the value of the stock as of such date under the provisions of said contract.

Appellee's petition alleges that on or about July 1, 1922, he purchased 40 shares of the common stock of the Speier & Simon corporation, of Lincoln, Nebraska, for $125 a share, at which time appellee and appellant entered into a written contract; that subsequently they agreed to a modification thereof, appellee to return to appellant 20 shares of said stock and appellant to cancel a promissory note of $2,500 referred to in said contract, which was done; that in all other respects the contract remained in full force and effect; that appellee's contract of employment was by mutual consent terminated on April 28, 1928, and at that time appellee demanded of appellant the market value of the remaining 20 shares of stock and tendered to appellant said shares; that appellant refused and failed to pay appellee the market value of said stock, which at that time was worth $1,000, and for which amount, with interest, appellee prays judgment.

Appellant's answer admits the purchase of 40 shares of common stock in said company from appellant by appellee for the sum of $125 a share and that said contract was made and entered into as alleged; alleges that the repurchase contract was rescinded by the parties when the dividend note was canceled and the corresponding 20 shares returned to appellant in January, 1928.

Appellee's reply is a general denial.

The evidence adduced at the trial shows that appellee entered the employ of the Speir & Simon Company in 1916. Mr. Simon subsequently left the company and appellee remained in the employ of Speier's, incorporated. On July 1, 1922, appellee and appellant entered into a written agreement whereby appellee was to purchase from appellant 40 shares of common stock in Speier's, incorporated, at $125 a share.

Appellee testified that appellant stated that he would have to have the books of the company gone over by a man at the First National Bank to determine what he should

sell the stock for to appellee. Appellee purchased 20 shares outright for $2,500, giving his note for the balance for $2,500, the entire 40 shares to be held by appellant as collateral security. The stock was issued in two certificates of 20 shares each. The $2,500 note was to be paid for out of dividends on the stock, appellant to receive 6 per cent. interest on the note. There were no dividends paid. In January, 1928, the parties orally agreed that appellant should cancel the $2,500 note and retain the stock for which the note was given. This was done. Appellee terminated his employment with appellant on April 28, 1928, and tendered appellant the 20 shares of stock in question in this case. The contract provided that appellant agreed to repurchase the stock at the termination of appellee's employment at the market value of the stock at that time.

Appellee further testified to the balance sheet prepared by Mr. Buckley, an accountant for Speier's, incorporated; also to the nature, condition, volume and expansion of the business and its losses; further, that appellant refused to buy the stock, asserting it had no market value; and that its market value, in appellee's opinion, on said April 28, 1928, was $45 a share.

Alfred Exley, appellant's bookkeeper and office manager from June, 1918, until appellee left the company's employ, testified that he had complete control of the books of the company, that his duties made him familiar with the business, that the company had made a good deal of money until recently, having built its capital of $18,000 up to a net worth of $131,713 in April, 1928; that later it had operated at a loss and, had all the losses been paid off at the time appellee's employment was terminated, the company then would have had assets of $131,713 more than its liabilities; the good-will of the company in addition to this was worth at least $4,000 to $5,000; the company had a very good reputation; he knew of the sale of 10 shares of stock of the company to a Mr. Davison in the latter part of 1927 at $100 a share; that the trial balance book received in evidence was prepared under his direction to the approval of Mr. Speier showing assets and liabilities of the

company, and the market value of the stock, as shown by such trial balance book as of April 30, 1928, was between $42 and $43 a share; that he bought and sold stock and was familiar with the conditions of transfers of stock in Speier's, incorporated, during the past 8 or 10 years, giving his opinion as to the market value of the stock on April 28, 1928, as being between $42 and $43 a share, having testified to a hypothetical question asked of him of the various facts concerning the assets, liabilities, reputation and general financial condition of the company as well as the 10 shares of stock sold to Mr. Davison by Mr. Speier.

Merlin L. Springer, secretary and treasurer of the Commerce Trust Company for more than five years, testified that he dealt in stocks and bonds and was familiar with such values and with the general reputation of Speier's, incorporated, and with the stock buying community on April 28, 1928; that his company had handled $50,000 of the preferred stock of one of Mr. Speier's competitors, Ben Simon & Sons, and in answer to a hypothetical question which included the reputation of the store, the poor merchandising years for the past few years, the increase in volume of business of the company for the past few months, the cut in overhead, his experience in the stock and bond market, the assets of the corporation, as shown by the trial balance book and financial statement of the company on April 30, 1928, said assets amounting to $463,861.03, and after deducting all liabilities from these assets, there would be left $131,713.85; further, that the preferred stock outstanding was $70,000 and common stock outstanding $145,000, gave it as his opinion that the market value of the common stock was $30 to $32 a share.

Appellant testified that he did not consider the common stock worth anything on April 28, 1928; in his opinion the corporation was insolvent at the time appellee's employment terminated; the company had lost money, a great deal of its loss being due to its expansion and the general conditions existing in the merchandising business following the depression; that he owned $58,000 of the preferred stock of the company and $130,000 of the common stock;

that appellee's note was canceled in January, 1928, appellant retaining the 20 shares of stock evidenced by appellee's note and returning to appellee the 20 shares for which he had paid cash; admitted the filing of an answer in bankruptcy which denied that his company was insolvent as late as May 10, 1928.

Mr. Waugh, vice-president of the First Trust Company of Lincoln, testified he was familiar with the stock and bond market; had examined the April, 1928, statement and was familiar with the general condition of business on April 28, 1928; testified in answer to a hypothetical question similar to that asked Mr. Exley and Mr. Springer and gave as his opinion that the common stock had no market value at that time; testified to an option procured by his company to purchase all of Mr. Speier's stock for $5,500 and that this option was never exercised.

Mr. Buckley testified that he had been an accountant for Speier's, incorporated, for a number of years; had made monthly reports of the business continuously and prepared the trial balance sheet heretofore referred to; that the business had suffered enormous losses and there was no improvement generally; creditors were pressing for payments of obligations; that his monthly reports did not take into account the market value of any of the assets of the corporation and the value of the real estate was fixed in arriving at his reports and that the stock had no market value.

The first assignment of error of importance claimed by appellant is that the contract was rescinded in January, 1928, at the time appellant canceled appellee's note and delivered to appellee the 20 shares for which appellee had paid cash.

There is nothing in the evidence to show that either party, or both, concluded that this action on their part was a rescission of the contract. At most it was modified by the parties to it in January, 1928, by canceling the note which was to have been paid out of dividends on the stock and indorsing the corresponding stock certificate to Speier. This was done. The contract provided that appellant was

to repurchase all the stock at its market value when appellee terminated his employment with appellant. There remained essential elements of the contract to be performed by the parties to it. There is no inconsistency. The evidence will not support rescission. The parties by the agreement of January, 1928, did not cancel, annul or revoke the contract, no new contract existed, but the original contract was reduced, qualified and limited and the jury passed upon this question.

Rescission is an affirmative defense. *Herpolsheimer v. Christopher,* 76 Neb. 355, where the court stated in the opinion that whether rescission and abandonment of the contract by the plaintiff took place at the time the notes were delivered to him is a question which should have been submitted to the jury. *Bartlett v. Scott,* 55 Neb. 477. In the latter case the court declined to weigh conflicting evidence, stating the evidence bearing on rescission to be conflicting and hopelessly irreconcilable. The question of rescission was submitted to the jury in that case as a question of fact. In 13 C. J. 789, sec. 1010, it is stated that it is for the jury to determine whether facts relied on as constituting a breach justifying a rescission have been established.

Appellant did not plead rescission in the municipal court, but did plead it in the district court. Appellee moved to strike this defense from appellant's answer in the district court upon the ground that it changed the issues that were tried in the lower court. This motion was overruled. Appellee's motion was proper. The municipal court and the county court having the same jurisdiction in so far as this case is concerned, the rule as set forth in *Sloan Commission Co. v. Fry & Co.,* 4 Neb. (Unof.) 647, and in *Bankers Union of the World v. Favalora,* 73 Neb. 427, would apply. Appellant received the benefit of this affirmative defense, the same being a question of fact for the jury, and, failing to prove the defense of rescission by a preponderance of the evidence, he cannot now complain.

Appellant cited as error that the trial court did not submit to the jury the proper measure of damages, his contention being that the measure of damages is the difference

between the contract price and the market value, and since, in the contract, the contract price was the market value, there can be no difference between these two amounts.

The contract, as we construe it, provides that the original seller agreed to repurchase the stock from the original purchaser at the market value of the stock at the time the original purchaser terminated his employment with the original seller. Appellee terminated his employment with appellant April 28, 1928. The market value of the stock as of that date is the basis of recovery and made so by the parties to the agreement. The court instructed the jury accordingly. The contract is clear and conclusive as to the basis of recovery.

We are inclined to follow the rule heretofore laid down in this class of cases that the measure of damages for a breach of contract to repurchase stock or other property is the amount which the original seller has agreed to pay the original buyer as the repurchase price rather than the difference between the contract price and the market value. *Fremont Carriage Mfg. Co. v. Thomsen,* 65 Neb. 370; *Stratbucker v. Bankers Realty Investment Co.,* 107 Neb. 194; *Grotte v. Rachman,* 114 Neb. 284; *Griffin v. Bankers Realty Investment Co.,* 105 Neb. 419. Appellee's damages, if any, were the market value of the stock on April 28, 1928, and were a matter of proof and a question of fact for the jury.

The next assignment of error advanced by appellant is that the verdict is not sustained by the evidence and that the assessment of the amount of recovery was too large under the evidence. Most of the evidence relating to market value of the stock has heretofore been set out. The stock was not quoted or listed on any exchange or market and was held almost exclusively by appellant and his family. Appellee resorted to the books of the company and sought by expert testimony to determine the market value of the stock from said books. The evidence discloses that the purchase of the stock in the first instance was made by appellee after appellant had arrived at the figures the stock should sell for from the books of the company.

Where corporate stock is not listed or freely bought and sold in the open market, the assets and liabilities are ad-

missible to show the market value of the stock. In *Rewick v. Dierks Lumber & Coal Co.*, 109 Neb. 300, this court held: "On the question of the value of corporate stock, statements prepared by expert accountants employed by the corporation, forming part of the records of the same and acted upon by the corporation as correct statements of its financial condition, are receivable in evidence as admissions against interest."

From the evidence the jury could very properly return a verdict for the amount returned in this case. The verdict is sustained by the evidence and is not contrary to law.

A number of other errors are assigned; but, while we have carefully considered them all and have read the record and appellant's brief, we do not deem it necessary to refer to them further. We find no prejudicial error in the record and the judgment is

AFFIRMED.