CAMPBELL, RECEIVER *v.* GRANT TRUST & SAVINGS COMPANY.

[No. 14,485. Filed July 27, 1932. Rehearing denied October 6, 1932. Transfer denied June 17, 1933.]

*Gus S. Condo* and *Robert R. Batton,* for appellant.

*J. F. Charles,* for appellee.

KIME, P. J.—The claimant, Grant Trust & Savings Company, brought this action as a claim against the Receivership of Hogin, McKinney & Company of which John O. Campbell was the receiver. The original claim was filed with the Receiver and, although in one paragraph, counted on four separate promissory notes given by Hogin, McKinney & Company to Grant Trust & Savings Company.

Upon recommendation of the Receiver, the claim was allowed as to the notes marked "Exhibits A, B and D," and disallowed as to the note marked "Exhibit C" in the principal amount of ten thousand ($10,000) dollars,

and as to the part so disallowed was, upon order of the Court, placed upon the issue docket and entitled, *"Grant Trust & Savings Company* v. *John O. Campbell, Receiver for Hogin, McKinney & Company."*

The defendant Receiver filed his answer in three paragraphs to that portion of the claim which counted upon the note marked "Exhibit C," in the principal sum of ten thousand ($10,000) dollars. The first paragraph of answer was a general denial; the second alleged a total lack of consideration; and the third alleged, in substance, "that on the 21st day of June, 1920, defendant's insolvent corporation filed with the Secretary of State of the State of Indiana an amendment to its articles of association, pursuant to law, which amendment provided for the authorization and issuance by said corporation of six hundred (600) shares of preferred capital stock, having a par value of one hundred ($100.00) dollars each, due serially from 1924 to 1930, inclusive, as in said amendment more specifically provided, among which was a series of said stock designated as series F, due July 1, 1929, consisting of one hundred (100) shares of the par value of one hundred ($100.00) dollars each."

"That on or about the 22nd day of June, 1920, the Citizens Trust & Savings Company of Marion, Indiana, became and was the owner of said series F of said preferred stock in its entirety, in the total par value of ten thousand ($10,000.00) dollars, and continued the owner of said stock until some time in the year 1925 or 1926, at which time the said Citizens Trust & Savings Company was consolidated with and absorbed by the plaintiff, Grant Trust & Savings Company, and all of its assets, including said preferred stock, were purchased by the said Grant Trust & Savings Company, which latter company then and thereby became the owner of

the said series F of said preferred stock in its entirety, and is now the owner of the same."

"That the said Grant Trust & Savings Company was the owner of said series F of said preferred stock in its entirety on the first day of July, 1929, when the principal amount of said stock became due according to its terms, and demanded payment thereof; but defendant's insolvent corporation was then in a failing condition and wholly unable to pay the principal amount of said preferred stock, and then had a large number of creditors, whose claims it was unable to pay because of being in such failing condition, all of which was known to the said Grant Trust & Savings Co., its officers and agents; and that the said corporation, Hogin, McKinney & Company, became and remained in default of the payment of the principal amount of said series F of said preferred stock from and after the said first day of July, 1929, until the 13th day of November, 1929."

"That on the last above mentioned date, at the solicitation of the officers and agents of the said Grant Trust & Savings Company, and in fraud of its other creditors, the president of Hogin, McKinney & Company, defendant's insolvent, executed and delivered unto plaintiff the promissory note herein sued upon (Exhibit C), the sole consideration for which, if any, was the redemption of the said series F of said preferred stock in its entirety. That there never was any other consideration of any other kind or character moving from the said Grant Trust & Savings Company to Hogin, McKinney & Company for said note, and that the said certificate representing the said stock was not delivered to defendant's insolvent upon the delivery of said note, but the same was described in the said note as collateral security therefor, and remained and is now in the possession of Grant Trust & Savings Company,

ostensibly as collateral security to secure the payment of the said note."

"That said note was given by defendant's insolvent at the solicitation of the officers and agents of the Grant Trust & Savings Company, in violation of law, and in fraud of the other creditors of defendant's insolvent."

To the second and third paragraphs of answer, claimant filed a reply in general denial. The cause was submitted to the Court for trial, who, after hearing the evidence, rendered a finding and judgment in favor of the claimant, Grant Savings & Trust Company. The Court found that claimant's claim was filed in a valid manner and that the allegations therein were true; that the claim be allowed by the insolvent's receiver Campbell, as a common claim in the receivership and that the costs be paid by said receiver.

The defendant receiver (appellant herein) filed his motion for a new trial, and as reason therefor alleges: (1) That the finding and decision of the court is not sustained by sufficient evidence. (2) That the decision of the court is contrary to law. The only error assigned and relied upon here is that the court erred in overruling appellant's motion for a new trial.

An examination of the evidence discloses that competent and uncontradicted testimony was introduced to the effect that Hogin, McKinney & Company was solvent on February 1st, 1930, some time after the execution of the note in suit. The financial statement of the corporation, made on November 1st, 1929, showed more than four times as much assets as debts, and after the giving of the note, showed two and one-half times as much assets as there were debts. A Mr. Stricler, who was manager and secretary of the corporation, testified that, with the exception of a certain correction, which is immaterial here, the financial statement as of November 1st, 1929, was correct.

Appellant contends that since the record clearly shows that Hogin, McKinney & Company became insolvent before the note in suit *was paid,* nothing can now be paid thereon out of the assets of the corporation until all of the creditors of the corporation have been paid in full, and further contend that, so long as this note remained unpaid, it must, as against the creditors of Hogin, McKinney & Company, be regarded as still representing preferred stock in the hands of appellee. In support of this contention appellant cites Sec. 4995, Burns Ann. St. 1926, which says, among other things, that ". . . in case of insolvency, or upon the dissolution of such company, such debts or other liabilities shall be paid in preference to such preferred stock. . . As amended, Acts 1903, p. 220," and also cites *Reagan v. First National Bank* (1901), 157 Ind. 623, 61 N. E. 575, 62 N. E. 701. Appellant has incorporated in his brief the following language found on page 672 of the above case: "When such company becomes insolvent, it is immaterial whether such stock then continues to be evidenced by a stock certificate or is merged into a promissory note. It, under the provisions of this positive statute, must be postponed in its payment until all other debts are paid. The law does not regard the shadow of the thing, but rather the substance; hence, the fact that a note may have been executed for the surrender of this stock does not enlarge the right under the law of the stockholders." However, appellant has apparently overlooked or ignored the language immediately preceding that quoted from the Reagan case, *supra,* which says: "If the Gates note in question had been in good faith accepted for the surrender of his stock *before the company had become insolvent, perhaps a different question might be presented,* but when the company had once become insolvent, its rights or authority to merge this stock into a note and then pre-

fer it as it did over the payment of the claims of its bona fide creditors, is, according to the letter and spirit of the statute, forbidden." (Our italics.) From this, it seems to us that the learned judge, in writing the opinion from which we have just quoted, foresaw that a situation such as we are now confronted with might arise, and so indicated.

The Reagan case, *supra*, is readily distinguishable from the case at bar in that the corporation therein was insolvent at the time the transaction took place, whereas in the instant case, as before stated, there remained after the execution of the note two and one-half times more assets than debts. From this it is quite apparent that there was no fraud perpetrated upon the creditors, and we think there is no question as to the validity of the note.

The retirement of the stock held by appellee was provided for and authorized by law, Sec. 4995, Burns, *supra*, but an agreement by a corporation to redeem its stock remains at all times conditional upon the solvency of the corporation at the time the buyer elects to exercise his right to have the stock redeemed. *McIntire* v. *Bement's Sons* (1906), 146 Mich. 74, 109 N. W. 45, 10 Ann. Cas. 143. We are in accord with the principle laid down in the Reagan case, but we find nothing therein that would preclude a corporation from redeeming its preferred stock as it matures, when the stock contains a provision for its redemption, and such redemption is made when the corporation is solvent, providing, of course, that the relinquishment or giving of corporate assets for such redemption does not render the corporation insolvent. The result here might also have been different had there been a showing that the giving of the note adversely affected existing creditors, or that the appellee or officers of the corporation had knowledge, either

actual or constructive, that such action would render the corporation insolvent. At this point we might add that the record in this case does not show that any of the present creditors were creditors of the corporation at the time the note in suit was given, with the possible exception of Mr. Stricler, the general manager; but as he signed the note in question as president of the corporation he will not be heard to say that he was defrauded by the execution of this note. These creditors were therefore subsequent creditors, and as a general rule, in case a corporation purchases its own stock, paying therefor with corporate assets, such subsequent creditors can not be regarded as prejudicially affected. 7 R. C. L., p. 550; *Rollins* v. *Shaver, etc., Co.* (1890), 80 Iowa 380, 45 N. W. 1037, 20 Am. St. Rep. 427; *Rice et al.* v. *Thomas* (1919), 184 Ky. 168, 211 S. W. 428. There are undoubtedly conditions under which a court may be required to look upon the holder of a note as a stockholder, or upon a note as stock, such as in the Reagan case, but we do not believe that such a condition exists here.

Appellee insists, and we think rightly, that it does not appear in this action as a stockholder (although it still owns Series "G" of the preferred stock upon which it will suffer a total loss), but that its position is that of a creditor seeking to enforce its note.

In conclusion we wish to say that the language of that part of Sec. 4995, Burns, heretofore quoted, is clear and requires no construction. We think it is almost universally recognized that corporate property must first be appropriated to the debts of a corporation before there can be any distribution of same among stockholders, and we believe this to be the intent of the above statute. We do not wish, by the result of this opinion or any language herein, to be con-

strued as having deviated or departed from the above rule.

Finding no error, the judgment of the Grant Superior Court is in all things affirmed, and it is so ordered.