CHARLES D. AMMON, APPELLEE, V. CUSHMAN MOTOR WORKS, APPELLEE: OTHELLO BEEZLEY ET AL., INTERVENERS, APPELLANTS.

FILED FEBRUARY 8, 1935. No. 29064.

*George I. Craven* and *Skiles & Skiles,* for appellants.

*Perry, Van Pelt & Marti* and *J. P. O'Gara, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and ELDRED, District Judge.

ELDRED, District Judge.

The plaintiff, appellee, the holder of preferred stock in the defendant corporation, brought this action to recover

from the defendant the par value of 88 shares of preferred stock of the Cushman Motor Works, with accrued dividends at 7 per cent. per annum from May 1, 1921, under the provisions of article VII of its amended articles of incorporation, providing: "The corporation when requested so to do, in writing, at least ninety days before the end of any fiscal year, by the holder or holders of preferred stock, shall, at par with accrued dividends, within thirty days after the end of such fiscal year, purchase, redeem, and retire of the preferred stock designated in such request, a total amount up to, but not in excess of, three per cent. of the aggregate of all amounts of preferred stock that shall have been issued."

In his petition the plaintiff sets out articles V, VI, VII, and VIII of the amended articles of incorporation of the Cushman Motor Works, and alleges that said corporation issued stock certificates representing 2,938 shares of preferred stock; that plaintiff was the owner of 509 shares of said preferred stock; that during 1919 and 1920 the defendant corporation paid dividends on its preferred and common stock; and that during said years there was set aside from the net earnings of the corporation, and credited to the preferred stock sinking fund account, the sum of $17,010. On August 1, 1931, plaintiff made written request of the defendant to purchase, redeem and retire 88 shares of his preferred stock, and tendered stock certificates to the defendant. It is further alleged that the defendant corporation is a going concern whose assets far exceed its liabilities. Plaintiff prays judgment for the par value of 88 shares of preferred stock, together with accrued dividends thereon from May 1, 1921, aggregating $15,884.

An answer was filed by the defendant corporation, the material allegations of which are incorporated in the amended answer of the interveners, the substance of which is later referred to herein.

On February 25, 1933, a judgment was entered in favor of the plaintiff and against the defendant for $15,884,

with interest. April 8, 1933, Othello Beezley and 21 other holders of preferred stock in the defendant corporation filed an application, on behalf of themselves and all other stockholders similarly situated, to vacate said judgment. After a hearing on said application the court, on May 16, 1933, set aside and vacated said judgment and permitted the interveners to file an amended answer instanter, which amended answer admitted the corporate existence of the defendant, and the amended articles of incorporation set out in plaintiff's petition, and that the defendant issued 2,938 shares of preferred stock; and denied, generally, the other allegations of the plaintiff's petition. Further answering, the interveners allege that the purported sinking fund of $17,010 was but a bookkeeping transaction; that during the years said sinking fund was carried on the books of the defendant corporation to January 1, 1931, said corporation sustained financial losses to such an extent that all its surplus was exhausted. Further answering, the interveners allege that articles VI and VII of the amended articles of incorporation are void; that the interveners own a total of 189 shares of preferred stock; that the fair and reasonable market value of the assets of the defendant corporation is less than the value of the preferred stock issued and outstanding; that if the plaintiff is permitted to recover on his preferred stock he will secure an unfair preference.

No copies of replies appear in the transcript; but brief of appellee states that replies were filed, and that statement not being challenged by appellants, it will be assumed that issues were joined on the answers.

On June 15, 1933, the case went to trial before a jury. On June 16, 1933, the jury were discharged and trial continued before the court, and on submission was taken under advisement. On August 1, 1933, there was a finding and judgment in favor of the plaintiff and against the defendant, Cushman Motor Works, for the sum of $15,884, with interest at 7 per cent. Motion for a new trial on the part of the interveners was filed, which, on the 15th day of

September, 1933, was overruled, and the interveners have appealed to this court. No appeal has been taken by the Cushman Motor Works, defendant.

Articles V and VI of the amended articles of incorporation of the Cushman Motor Works provide: "V. The holders of the preferred stock shall be entitled to dividends out of the net earnings of the corporation at the rate of seven per cent. per annum, and no more, payable quarterly on such specific days in each year as the by-laws shall provide; and such dividends shall be cumulative, so that if the corporation shall fail to declare and pay, in whole or in part, any quarterly dividend, such dividend shall thereafter be declared and paid before any dividend shall be declared, paid upon, or set apart for the common stock. * * *

"VI. A sinking fund for the retirement of the preferred stock by redemption shall be created out of the net earnings of the corporation that shall remain after deducting therefrom any accrued dividends upon the preferred stock. For that purpose, there shall be credited to an account to be called the preferred stock sinking fund account, at the end of each fiscal year a sum equal to three per cent. of the aggregate of all amounts of preferred stock that shall have been issued, including any such preferred stock that may have been retired or redeemed, until the preferred stock sinking fund account shall equal the redeemable value of the preferred stock issued and outstanding. * * * The sinking fund provisions are to be cumulative and contingent only on net earnings in excess of the preferred stock cumulative dividends. * * * The sinking fund shall not be made the basis of any dividend whatever upon the common or preferred stock, nor shall said fund be depleted in any way except for the retirement or redemption of preferred stock; but until so used, any sums to the credit of the sinking fund may be employed in the business of the corporation."

The provisions of the preferred stock certificate are in accord with the provisions of the articles of incorporation.

The fiscal year of the corporation ends October 31.

In addition to the facts admitted by the pleadings, it appears from the evidence, without substantial conflict, that the plaintiff owned 509 shares of preferred stock of the defendant corporation; that during the years 1919 and 1920 the defendant paid dividends on its preferred and common stock, but no dividends have been paid since; the plaintiff at no time has been paid dividends on stock held by him; plaintiff made a written request of the defendant corporation that it repurchase, redeem and retire 88 shares of his preferred stock, and tendered stock certificates to said defendant, and that no preferred stock was ever repurchased, redeemed or retired by the Cushman Motor Works.

Likewise it appears, without substantial conflict, that during the years 1919 and 1920 there was set aside from the net earnings of the corporation a sinking fund aggregating $17,010, and that none of said sum has been used for the purpose of repurchasing, redeeming or retiring any stock; but the appellants challenge the legal effect of the proceedings had for the purpose of creating said sinking fund.

In their brief appellants have confused the provisions of the articles of incorporation, applying where the corporation is the moving party seeking to redeem and retire stock, and the provisions applicable where a stockholder is seeking to have his stock repurchased or redeemed. In the latter case no action by the board of directors is necessary. The articles made it obligatory on the corporation to create a sinking fund; the provisions of article VI, heretofore set forth, providing therefor. The account was opened by the bookkeeper, on instructions of officers of the company, after the report of auditors was made showing the existence of net earnings in 1919 and 1920, out of which a sinking fund should be created. The fund in this case was created from the source and in the manner contemplated by that section, and such account has been so carried on the books of the corporation since that time, and also shown on its income tax returns.

It is further urged that this sinking fund was used in the business of the corporation under the authority of the provisions of article VI, providing: "But until so used (i.e., to retire preferred stock), any sums to the credit of the sinking fund may be employed in the business of the corporation." It was not the intention, by the provision quoted, that the account would be extinguished when the funds belonging thereto were so used; and the fact that any part or all of that account may have been so employed did not destroy the existence of the account, nor would it affect the right of the holder of preferred stock to have his stock redeemed, if otherwise entitled thereto. In legal effect, the fund still remains intact.

The appellants challenge the following special findings made by the trial court:

"That the defendant is a going concern with assets far exceeding its liabilities and that the purchase and redemption of plaintiff's said shares and the accrued dividends thereon would not impair the rights or endanger the security of defendant's creditors.

"That not only have the assets of the defendant corporation greatly exceeded the amount of its general indebtedness, that is to say, all of its indebtedness of every kind except its stock liability to its stockholders, but at the present time the value of such assets is much greater than the amount of its indebtedness."

The liability of the corporation to its stockholders does not make the stockholders creditors within the scope of the law involved in this case. "While the relation of a holder of preferred stock, in some of its aspects, is similar to that of a creditor, such holder, however, is not a creditor save as to dividends after the same have been declared." *Miller v. M. E. Smith Building Co.*, 118 Neb. 5.

That the corporation, at the time of the request for the redemption of the stock by the plaintiff, and at the time of the commencement of this action, was a going concern is not seriously controverted. A material issue here presented is as to the financial condition of the corporation at

the time the request for the repurchase or redemption of the stock was made. *Campbell v. Grant Trust & Savings Co.*, 97 Ind. App. 169; *McIntyre v. E. Bement's Sons*, 146 Mich. 74.

It appears that the corporation during the fiscal year ending October 31, 1919, operated at a net profit of $120,106.54, and during the fiscal year ending October 31, 1930, operated at a net profit of $69,230.24. Public accountants were employed to audit the affairs of the corporation, who made a report as of October 31, 1920, disclosing assets of $1,818,135.27, and that there was on that date a surplus of $141,749.93. The sinking fund account was opened at that time. The annual reports, or balance sheets, of the corporation for the years following 1920 are in evidence and disclose that the corporation sustained heavy losses and depreciation of assets during the years following. The balance sheet of October 31, 1930, the last one submitted prior to the date of the request by plaintiff for the redemption of his preferred stock, not including an item of good will of $100,000, about which there is some dispute, shows assets $524,681.26, and liabilities $92,255.79; and the balance sheet for October 31, 1931, three months after request for redemption was made, not including said item of $100,000 for good will, shows assets of $471,196.25, and liabilities of $57,207.50. These balance sheets were prepared under the supervision of Othello Beezley, one of the interveners. Othello Beezley was connected with the company as bookkeeper from 1917 to 1923, when he became chief accountant, until 1931, and was secretary in 1931, 1932, and until January 9, 1933; he testified that in his opinion the corporation was insolvent January 1, 1933; but further stated, in forming that conclusion he took into consideration, as part of the liabilities, the outstanding capital stock. "Q. You are not undertaking to say that either now or at any other time the company does not have sufficient assets to pay the debts owing people other than stockholders? A. No, sir."

Charles D. Ammon, plaintiff, testified that the assets, in

his opinion, would sell for an amount sufficient to pay all indebtedness of the company, plus a judgment of $16,000.

Space will not permit a review of all the evidence on this issue. The testimony thereon was conflicting, and there being evidence to support the findings of the trial court, such findings are entitled to the same weight as the findings made by a jury. This court concludes that the findings of the trial court, above referred to, are sustained by the evidence.

The provisions of the articles of incorporation and stock certificate for the repurchase and redemption of preferred stock, together with the general law, evince a contract between the corporation and the holder of such stock. *Miller v. M. E. Smith Building Co.*, 118 Neb. 5; *Mannington v. Hocking Valley R. Co.*, 183 Fed. 133. Such an agreement is valid and enforceable where it appears that such redemption will not impair the rights of the corporate creditors. *Grotte v. Rachman,* 114 Neb. 284; *Griffin v. Bankers Realty Investment Co.*, 105 Neb. 419; *Booth v. Union Fibre Co.*, 137 Minn. 7; *id.*, 142 Minn. 127; *Vent v. Duluth Coffee & Spice Co.*, 64 Minn. 307; *Koeppler v. Crocker Chair Co.*, 200 Wis. 476. The measure of damage in such case, in the event of failure on the part of the corporation to repurchase or make redemption pursuant to the terms of such contract, is the amount the corporation has agreed to pay the holder of the preferred stock as the repurchase or redemption price. *Heller v. Speier,* 119 Neb. 787.

It appears from the evidence that the greater part of the dividends in controversy was earned prior to the time the plaintiff purchased the stock in question, and one assignment of error is that the dividends belong to the owner of the stock at the time the dividends are declared, and that the purchaser of stock has no claim, right or interest to the dividends that have been declared prior to said purchase, unless the purchaser, by special agreement, bought the dividend as well as the stock. The authorities cited by appellant support this contention. In the case at

bar, however, the last dividend paid on the preferred stock now owned by the plaintiff was on May 1, 1921. Since that date the evidence does not disclose that any further dividends were ever declared. None of the dividends which the plaintiff is seeking to recover were declared prior to the purchase by the plaintiff of the stock involved herein. Under the amended articles the dividends should have been paid quarterly, and article V provides that such dividends shall be cumulative; while article VII provides that the corporation, when requested so to do in writing, at least 90 days before the end of the fiscal year, by the holder or holders of preferred stock shall, at par with accrued dividends, repurchase, redeem and retire such stock. There is no requirement that the accrued dividends must be declared before they can be recovered. The stock having been transferred prior to the dividends in question being declared, and there being no agreement to the contrary, the transferee became entitled to the dividends as an incident to the ownership of the stock.

It is further urged that the dividends cannot be paid out of the sinking fund provided for the redemption of preferred stock. This proceeding is not to secure the payment of a dividend, nor in conflict with the provisions of the articles providing: "The sinking fund shall not be made the basis of any dividend whatever upon the common or preferred stock, nor shall said fund be depleted in any way except for the retirement or redemption of preferred stock." But it would seem that the intent was that the amount of the accrued dividends should be considered as a part of the sum required to make up the aggregate amount necessary to make redemption of the stock. The provision of the articles is that the dividends "shall be cumulative." And the provision, "shall, at par with accrued dividends," contemplates adding together the par value of the stock and the amount of dividends that have been accumulated or accrued to make up the aggregate value of the stock for the purpose of redemption; all to be paid from the sinking fund.

Both in the record and in the brief of the appellants, the amount paid by appellee for stock he purchased from third persons has been repeatedly referred to; but we do not consider that a material issue in this case. The former owners of the stock are not here complaining. Likewise, evidence as to proceedings had, after request for redemption was made, relative to the dissolution of the corporation and sale of its assets, are also immaterial to the issues here involved.

Appellants cite, as sustaining their first five propositions of law, the case of *Miller v. M. E. Smith Building Co.*, 118 Neb. 5. In that case it was held, under the facts there involved, that all of the holders of preferred stock should constitute one class and be treated alike; and appellants urge that such holding should be applied here. The trial court held the *Smith Building Company* case not to apply to the case at bar. The application of that case depends largely upon whether, at the time of the request of the plaintiff for the redemption of his stock was made, the corporation was a going concern with assets exceeding its liabilities? We have already held that the finding of the trial court, as to this issue, is sustained by the evidence. In the *Smith Building Company* case the court, in effect, found that such facts did not exist. There are a number of other distinguishing features between the two cases. The provisions of the articles of incorporation materially differ. In the *Smith Building Company* case the articles provided for the issuance of preferred stock in series, payable one series each year, over a period of twenty years, from the earnings of the corporation. It developed that the building was constructed for the use of M. E. Smith & Company, a mercantile concern, for storage purposes; that company agreed to pay a rental of $120,000 a year, which was sufficient to pay the taxes, upkeep, dividends on preferred stock, and redeem one series of stock each year. M. E. Smith & Company failed, and the Smith Building Company was not able thereafter to secure sufficient rental to pay more than the taxes and upkeep of the

building; the court found that the purpose for which the corporation was organized had failed, and that there were no longer any earnings out of which the different series of stock could be redeemed as they matured; so, the vital question in that case was: How were the rights of the holders of the different series of preferred stock to be protected, where the only means provided by the articles for redeeming the stock had failed? The action was brought in equity, seeking an adjudication as to the right of the holders of preferred stock, for appointment of a receiver, and the dissolution of the corporation. From this it will be seen that there is a marked distinction between salient facts and legal questions involved in that case, and those involved in the case at bar, as hereinbefore set forth. Hence, the decision in *Miller v. M. E. Smith Building Co.,* *supra,* cannot be considered as controlling in this litigation.

Plaintiff having brought himself clearly within his contractual right under the articles of incorporation and stock certificates, and no prejudicial error appearing in the record, the finding and judgment of the district court should not be disturbed. Judgment

AFFIRMED.