LAWRENCE INVESTMENT COMPANY, Appellant, vs. WENZEL & HENOCH COMPANY, Respondent.

*December 3, 1952—January 6, 1953.*

For the appellant there was a brief by *Orth, Riedl & Orth* of Milwaukee, and oral argument by *Charles A. Riedl.*

For the respondent there was a brief by *Harvey C. Hartwig,* attorney, and *Bernard C. Westfahl* of counsel, both of Milwaukee, and oral argument by *Mr. Hartwig.*

FRITZ, C. J.  Plaintiff's complaint alleged that its articles of incorporation were amended by resolution adopted February 8, 1929, which provided for an authorized capital stock of $85,000, consisting of 500 shares of common stock of the par or face value of $100 each, and 350 shares of preferred stock also of the par value of $100 each; and that said resolution provided:

"Out of the profits of the corporation dividends shall be paid upon issued and outstanding preferred stock at the rate of seven per cent (7%) per annum, payable semiannually, on the first days of July and January in each year before any dividends are paid on the common stock; and if for any reason, there is a nonpayment of dividends on such preferred stock, there shall be an accumulation of such dividends and payment thereof in full before any dividends are paid on the common stock; . . . Subject to the interest of the general creditors of the corporation, the preferred stock shall be a prior lien on all of the assets of the corporation, and shall

have a preference, not however, exceeding the par value thereof, over the common stock in the distribution of the assets of the corporation, other than profits. On and after the 8th day of February, 1934, the corporation may redeem any or all of its issued or outstanding preferred stock by payment of its face or par value, together with a premium of two per cent (2%) of its par value, and the payment of all dividends due to the date of such redemption. The amount of, and the manner, time, and method of the redemption of such preferred stock shall be determined by the board of directors of the corporation. . . ."

Plaintiff's complaint further alleged that of said preferred stock, certificate No. 4 for 25 shares was issued to the defendant Wenzel & Henoch Company on or about the 25th day of June, 1929; that the plaintiff corporation at no time since the issuance of its preferred stock by its board of directors or otherwise declared or paid a dividend upon any of such stock; that of said preferred stock there was outstanding on September 20, 1950, some $5,200 and on that day in order to enable plaintiff to retire said preferred stock, it at a meeting of its board of directors passed a resolution to redeem the same at par, together with a premium of two per cent as provided for in the amendment to its articles of incorporation; and that it thereafter notified the preferred stockholders, including the above-named Wenzel & Henoch Company, defendant, of its intent to redeem such stock, and offered to pay par plus two per cent premium for it, but that defendant refused such offer.

Defendant's answer admits that said certificate No. 4 for 25 shares of the preferred stock was issued to the defendant, and that defendant is the owner and holder thereof; and admits that defendant has refused to surrender said certificate of stock to the plaintiff upon payment of the par value plus two per cent premium. Defendant denies having knowledge or information sufficient to form a belief as to whether or not the plaintiff has at any time taken any action with reference

to dividends on the preferred stock, or taken any action to redeem it; and as to whether or not any dividend has ever been paid on the common stock of plaintiff corporation.

Defendant's answer and affidavits set forth the equitable defense that the controlling stockholder of plaintiff, for his own advantage only, and not for the interests of the corporation, wrongfully and in fraud of the rights of the defendant preferred stockholder, so manipulated the affairs of plaintiff corporation as to avoid the payment of preferred stock dividends, and when plaintiff's financial condition became such that payment of such dividends could no longer be escaped, then sought to exercise the redemption privilege. Such conduct would be inequitable, and plaintiff cannot come into a court of equity with clean hands, in seeking to force the defendant to surrender its stock. Inasmuch as the facts are in dispute in the instant case as to whether or not the corporation did have a surplus sufficient to permit the payment of cumulative dividends of the preferred stock at the time of redemption, the case cannot be disposed of by summary judgment, as such issue of fact must be determined by trial.

As stated in *Batson v. Nichols,* 258 Wis. 356, 358, 46 N. W. (2d) 192:

"Summary judgment should be granted only when it is perfectly plain that there is no substantial issue to be tried. *Prime Mfg. Co. v. A. F. Gallun & Sons Corp.* (1938), 229 Wis. 348, 281 N. W. 697; *Atlas Investment Co. v. Christ* (1942), 240 Wis. 114, 2 N. W. (2d) 714. The summary-judgment statute (sec. 270.635, Stats.) is not a substitute for a regular trial nor does it authorize the trial of controlling issues on affidavits. If there is any substantial issue of fact which entitles the plaintiff to a determination thereof by a jury or the court, the defendant's motion for summary judgment must be denied. *Parish v. Awschu Properties, Inc.* (1945), 247 Wis. 166, 19 N. W. (2d) 276."

*By the Court.*—Order affirmed.

CURRIE, J. (*concurring*). Up until September 20, 1950, when the board of directors of plaintiff corporation passed its resolution to redeem the outstanding $5,200 in par value of its preferred capital stock (of which amount the defendant owned $2,500 in par value), it is clear from undisputed facts set forth in the affidavits both in support of, and in opposition to, plaintiff's motion for summary judgment that the defendant, as a preferred stockholder, could not have successfully maintained an action to compel the board of directors of plaintiff corporation to declare any dividends on the preferred capital stock.

The undisputed facts disclose that the sole assets of the plaintiff corporation exclusive of cash on hand, consisted of an apartment building known as the Lawrence hotel in the city of Milwaukee, together with the furniture and furnishings situated therein. Said building was built about 1928, and according to plaintiff's books, the cost of said assets with additions to furniture and equipment, as of November 30, 1945, was as follows:

Building cost ....................... $233,306.76
Furniture ...........................  50,720.41
Real estate .........................  30,112.56
                                     _____
                                     $314,139.73

The apartment building had been operated at a loss during depression years, and as of the fiscal year ending November 30, 1945, in which year $691.15 of net profit was realized, the total aggregate operating deficit was $38,220.40. Thereafter, the net profits increased from $2,822.94 in the fiscal year ending November 30, 1946, to $10,446.54 in the fiscal year ending November 30, 1950, thereby reducing the deficit from operations for the whole period of plaintiff's operation of the building to $9,508.85. In 1929, two trust mortgages in the respective amounts of $160,000 and $35,000 had been

placed against the property, and in 1934, a foreclosure action was instituted by the trustees of these mortgages. A bondholders' committee was appointed to supervise the operation of the building, and various extension agreements were entered into which required all the net earnings of the property to be applied on the account of these two trust mortgages. On December 10, 1950, the plaintiff placed a new $150,000 real-estate mortgage upon the property in order to refund the approximately $130,000 then owing on the first two trust mortgages, and to provide $20,000 additional with which to make needed repairs and pay some past-due operating expenses. The new mortgage loan required that it shall be repaid in a period of fifteen years at approximately $15,000 per year. As of November 30, 1950, the reserve for depreciation as to furniture was $51,765.73 while the total cash balance on hand was $25,457.50, or approximately half of the depreciation reserve for the furniture alone, to say nothing about the depreciation reserve as to the building.

The defendant bases its contention, that plaintiff was in a position to have paid dividends on its preferred capital stock, on the fact that the fair market value of the apartment building as of 1950 greatly exceeded the book value shown by the plaintiff corporation's books, of cost less depreciation reserve, and, if such book value had been written up to reflect such true market value, the amount of such write-up would have wiped out the remaining operating deficit and left a surplus of more than sufficient to have paid all arrearages of dividends on the preferred stock.

The board of directors of corporations have discretion in determining whether to declare dividends on preferred stock as well as common stock. Such discretion in failing to declare a dividend on preferred stock will certainly not be interfered with by courts where the financial condition of the corporation is such as to demonstrate the wisdom of the board of directors in so failing to pay a dividend. The applicable prin-

ciple of law governing the exercise of such discretion by the board of directors is set forth in 12 Fletcher, Cyc. Corp. (perm. ed.), p. 180, sec. 5446, as follows:

"As a rule, what has been said in a former section as to the discretion of the directors in declaring or refusing to declare dividends applies to preferred stock, as well as common stock."

Surely in the present case where the corporation had an operating deficit as of 1950 when it sought to redeem and retire its preferred stock, and its cash balance on hand was only fifty per cent of its depreciation reserve for furniture, no court would hold that the directors abused their discretion in not paying a dividend on the outstanding preferred capital stock. Therefore, if the plaintiff under the provision of its amended articles of incorporation had the right, as of 1950, to redeem its preferred stock at par plus $2 per share premium, there would be no fraud on the part of plaintiff in so electing to retire such stock inasmuch as the plaintiff thereby would be doing only what it was legally entitled to do under its contract with the preferred stockholders. There is no claim made by defendant that the original contract embodied in the articles, as to redemption of the preferred stock, was fraudulent or that the defendant was induced to purchase the stock through fraud. Therefore, this is not a proper case for invoking the doctrine of "clean hands" to deny plaintiff its right to redeem its preferred stock according to the contract for the same as it existed in its articles.

The real question before the court on this appeal, as we view it, is one of construing the provision in the articles of incorporation for redemption of the preferred stock in order to determine the total amount that plaintiff must pay to preferred stockholders whose preferred capital stock is to be redeemed. Such clause reads as follows:

"On and after the 8th day of February, 1934, the corporation may redeem any or all of its issued or outstanding preferred stock by payment of its face or par value, together with a premium of two per cent (2%) of its par or face value, *and the payment of all dividends due to the date of such redemption*."

If the words *"all dividends due to the date of such redemption"* were intended to cover only dividends which had been declared by the board of directors, then the plaintiff would be entitled to the summary judgment for which it moved in the trial court. On the other hand, if these words were intended to mean all cumulative dividends not paid but as to the unpaid amount of which there was surplus available to pay them, then a question of fact was presented to the trial court to determine the issue of available surplus.

There seems to be a paucity of authority on the question of the proper construction of provisions in the articles of incorporation of corporations which require unpaid cumulative dividends of preferred stock to be paid in redeeming such stock.

The case of *Ammon v. Cushman Motor Works* (1935), 128 Neb. 357, 258 N. W. 649, however, appears to be directly in point. In that case the articles of incorporation of the defendant corporation provided that whenever requested by the holder or holders of preferred stock, the corporation was required to redeem up to an amount not to exceed three per cent of the aggregate amount of preferred stock issued *"at par with accrued dividends."* In 1931, the plaintiff preferred stockholder made a request to the corporation to redeem 88 shares of preferred stock which did not exceed three per cent of the preferred stock which had been issued. The last dividend paid on the stock was on May 1, 1921, and since that date no further dividends were ever declared. The court determined that the redemption price must include all accrued dividends to the date of redemption even though not declared.

The decision in *Sterling v. H. F. Watson Co.* (1913), 241 Pa. 105, 88 Atl. 297, by implication holds the same as the case of *Ammon v. Cushman Motor Works, supra.* In this Pennsylvania case the articles of incorporation granted to the corporation the option to retire the preferred stock upon payment *"of all arrears of dividends, and the par value thereof."* Some time before the corporation elected to retire its preferred stock it paid a stock dividend to both common and preferred stockholders. The question at issue was whether the corporation was entitled to credit on the redemption price, of par plus accrued dividends to date of redemption, for the value of the stock dividend previously declared and paid; and the court held that the corporation was not entitled to such credit. It is therefore clear that the corporation had never declared part of the preferred stock dividend that the court held must be included in the redemption price.

If provisions in the articles of incorporation relating to redemption of preferred stock, which contain a provision similar to that in the instant case, and in the cases of *Ammon v. Cushman Motor Works, supra,* and *Sterling v. H. F. Watson Co., supra,* requiring unpaid dividends to be paid in addition to par value and the premium (if a premium is provided for), were to be narrowly construed to have reference only to dividends declared by the board of directors and not yet paid, an unjust result might often occur. The holders of the common stock usually elect the board of directors and in that way control the corporation. In cases of corporations having a large indebtedness, or an expansion program requiring all available cash, but nevertheless earning substantial net profits, the board would have at least a plausible reason for not declaring dividends on the preferred stock, and could let them accumulate over a period of years. However, if a year thereafter occurred in which the board wished to pay a dividend on the common stock it could not do so without paying all arrearages of dividends on the preferred stock so long as such

stock was outstanding. However, if the redemption clause, which specified that all unpaid dividends on the preferred stock must be paid at time of redemption, were to be construed as only referring to dividends previously declared, the common stockholders, through their controlled board of directors, could then maneuver a payment of dividends on the common stock by merely redeeming the preferred stock at par plus the specified premium (if the articles did provide for the payment of premium).

The plaintiff, in the instant case, relies upon our decision in *Franzen v. Fred Rueping Leather Co.* (1949), 255 Wis. 265, 38 N. W. (2d) 517, 39 N. W. (2d) 161, which held that until a dividend is declared it cannot in any sense be said to be "owing" or "due;" which case also involved an attempted redemption of preferred stock. However, in that case although all cumulative dividends on preferred stock were paid to the redemption date of April 1, 1948, the plaintiff preferred stockholder contended that he was entitled to a full year's dividends out of the earnings of the previous fiscal year which had ended October 31, 1947, and therefore was entitled to the quarterly dividends which would have been paid July 1 and October 1, 1948, if his stock had not been redeemed as of April 1, 1948. While this court was correct in holding in the *Fred Rueping Leather Co. Case,* that a dividend is not owing or due until declared so as to create a debtor and creditor relationship which would permit the stockholder to sue the corporation for payment of the dividend, this principle is not necessarily also controlling in construing the redemption clause of the articles of incorporation permitting redemption of preferred stock. We believe a more equitable result would be reached by construing such redemption clause to hold that the reference to unpaid dividends, or dividends "due," includes all unpaid cumulative dividends, whether declared or not, so long as the corporation has a surplus from which the same may be paid.

By so construing the redemption clause with reference to unpaid dividends, the board of directors of a corporation still determines in its discretion whether the dividends should be paid under a redemption clause such as we have before us in the instant case, because it is still optional with the board whether or not the preferred stock shall be redeemed.

Under this view of the case, the trial court was correct in not granting plaintiff's motion for summary judgment because the issue of fact must still be determined as to whether the plaintiff corporation had a surplus as of the redemption date out of which unpaid cumulative dividends on the preferred stock could have been paid.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice BROWN join in this concurring opinion.