ROME MILLER, APPELLEE, V. M. E. SMITH BUILDING COMPANY; A. E. PETERSON ET AL., INTERVENERS, APPELLANTS.

FILED FEBRUARY 6, 1929. No. 26511.

6

*Mullen & Morrissey* and *Monsky, Katleman & Grodinsky,* for appellants.

*Smith, Schall, Wright & Sheehan* and *Hotz & Hotz, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Thompson and Eberly, JJ.

Good, J.

This action was brought by plaintiff, the holder of preferred stock in the defendant corporation, seeking an adjudication that all of the preferred stock issued by defendant should be held to be due and payable, and that the holders of said stock were entitled to share *pro rata* in the corporate assets, and to enjoin the defendant from redeeming and retiring its preferred stock in the order of its maturity. It appears without question that defendant issued preferred stock in 20 series designated by letters from A to T, inclusive. Series A, by its terms, became due and payable in 1923, and the other series became due and payable one series annually thereafter.

Defendant answered, admitting its corporate character, the issuance of preferred stock in serial form, and setting forth its financial condition. Thereafter, plaintiff filed what is termed an application, but which was, in fact, an amended and supplemental petition, in which he incorporated all the allegations of his original petition and supplemented them by allegations of fact occurring since the filing of the original petition.

In the amended and supplemental petition it was set forth that the object and purpose of the corporation had failed; that it was insolvent; that its income was insufficient to

any more than pay operating expenses, and was insufficient to pay any of the preferred stock as it matured, or any of the dividends on any of the preferred stock, and plaintiff prayed for the dissolution of the corporation and for the appointment of a receiver to take charge thereof, pending dissolution. The board of directors of the defendant, by resolution, authorized, and there was filed an answer consenting to, the appointment of a receiver. This was followed by an order entered by the court, appointing a receiver to take charge of the property and assets of the defendant, and requiring the receiver to report to the court. The receiver filed a report setting forth the amount and character of the assets of the corporation, its liabilities and financial condition. The court then directed notice to be given to all stockholders to file their claims with the receiver. Thereupon, holders of some of the preferred stock which, by its terms, had matured, intervened, attacking the appointment of a receiver, denying that the corporation was insolvent or that any cause existed for the appointment of a receiver, and averring that the holders of preferred stock were entitled to be paid out of the assets of the corporation, in the order of the maturity of the preferred stock. Other holders of preferred stock in later maturing series intervened on behalf of themselves and others similarly situated; alleged that the corporation was insolvent; prayed that all preferred stockholders be adjudged entitled to share ratably in the assets of the corporation, and joined in the prayer of plaintiff's petition.

On a trial of these issues the court sustained the appointment of a receiver, and found and determined that all preferred stockholders were entitled to share ratably in the corporate assets without regard to the date of maturity of preferred stock held by them. The intervening stockholders representing the earlier maturities of preferred stock have appealed.

The principal questions presented by this appeal are: (1) Were all the preferred stockholders entitled to share pro rata in the assets of the corporation? (2) Did the

court have jurisdiction to appoint a receiver? The facts are not in dispute.

M. E. Smith & Company was a mercantile corporation doing a large wholesale business in the city of Omaha. It desired buildings for storage purposes and proceeded to organize the defendant company for the purpose of constructing such a building as it needed. The articles of incorporation adopted provided for an authorized capital of $1,500,000, $500,000 of which would be common stock and $1,000,000 preferred stock; that the preferred stock should be issued in 20 series designated by letters from A to T, inclusive; that $50,000 was authorized to be issued in each series; that series A should mature on May 31, 1923, and one series thereafter should mature annually and be paid and retired; that the holders of preferred stock should be entitled to receive 7 per cent. cumulative dividends.

Section 4 of the articles of incorporation, among other things, provided: "From the net earnings or surplus of said corporation there shall first be paid to the holders of the preferred stock, dividends at the rate of seven (7) per cent. per annum from the date of issue, and no more, * * * which dividends shall be cumulative, so that if in any year dividends amounting to seven (7) per cent. shall not have been paid thereon, the deficiency shall be fully paid or set apart, but without interest, before any dividends shall be paid or set apart on the common stock. * * * In the event of the dissolution or liquidation of the corporation, whether voluntary or involuntary, the holders of the outstanding preferred stock shall be entitled to be paid the par amount of their shares and unpaid accrued dividends thereon, before any amount shall be paid to the holders of the common stock. * * * The preferred stock shall be issued in serial form, so that the par value of fifty thousand (50,000) dollars thereof, with accrued and unpaid dividends thereon, will become due and payable to the holders thereof each year, beginning May 31st, 1923, which the corporation agrees to pay and retire at maturity. * * * The preferred stock shall not be increased, and no mortgage shall

be placed upon the property of the corporation without the consenting vote of three-fourths (3/4) of the preferred stockholders outstanding, at a stockholders' meeting.

"The corporation shall have power and authority to lease to M. E. Smith & Company, a Nebraska corporation, all of lots 4, 5, 6 and the west 33 feet of lot 3, all in block 124, in the City of Omaha, Nebraska, now owned by it, and the building or buildings to be erected thereon, with the funds to be realized from the sale of said preferred stock, for a period of time up to and including May 31st, 1943, for a sum sufficient to pay all dividends upon the preferred stock outstanding when and as the same are payable, and to pay the par value of said preferred stock when and as the same become due and payable, plus sufficient to pay the taxes, insurance and upkeep of said property. * * * Each share of stock issued and outstanding as shown by the corporate records shall be entitled to one vote for each officer and on every question or proposition voted on at all annual or special stockholders' meetings, and such vote may be made by proxy.

"The terms and conditions relating to or applying to said preferred stock as contained in this amendment to the articles of incorporation of this corporation shall constitute and be a contract with the preferred stockholders which shall not be changed by the corporation without their unanimous consenting vote, cast at a stockholders' meeting."

Preferred stock was issued to the extent of something over $700,000, real estate was purchased and a nine-story brick building thereon constructed, and by defendant leased to M. E. Smith & Company at an annual rental of $120,000, which amount was sufficient to pay the taxes, insurance, repairs, operating expenses, dividends on preferred stock, and to mature and retire annually one series of the preferred stock. Rentals were paid by M. E. Smith & Company for a time, and series A of the stock was redeemed and retired when it became due. Shortly thereafter, M. E. Smith & Company became insolvent, was adjudged bankrupt, vacated the leased premises and repudiated the lease. Defendant thus

found itself in possession of a large storage building on its hands without a tenant. The officers sought diligently to find new tenants and succeeded in finding tenants for portions of the building, but were unable to secure sufficient rentals to any more than pay the taxes on and operating expenses of the building. Some of the holders of matured stock brought suit against the corporation to recover the par value of their stock and unpaid cumulative dividends, and others were threatening to bring such actions at the time trial was had.

It is disclosed by the record that at the time of the trial the value of the real estate owned by defendant did not exceed $400,000; that it had no debts other than those due to its preferred stockholders; that the par value of the outstanding preferred stock was $692,000; and it clearly appeared that, if the holders of preferred stock in the series first to mature should be paid out of the corporate property, nothing would be left for the holders of preferred stock in the later maturing series. Under these circumstances, we are required to determine: What are the rights of preferred stockholders, as between those holding stock in the early maturing series and those holding stock in the later maturing series?

Appellants contend that the certificate of preferred stock issued by defendant constitutes a contract between it and the holders of the stock, and that the rights of the parties must be determined by this contract; that, when any preferred stock has, by its terms, become due, the holder ceases to be a stockholder and at once becomes a mere creditor of the corporation. They further contend that the defendant is not insolvent, because it owes no obligation or debts save to the holders of matured stock, and that the amount of stock matured is much less than the actual value of defendant's corporate assets, and argue that the facts disclosed are insufficient to warrant a liquidation and dissolution of the corporation or the appointment of a receiver.

Of these contentions, in their order, we think the rule with reference to the first contention is that a certificate,

representing corporate stock, is evidence of the holder's title and, alone, does not necessarily constitute a contract between the certificate-holder and the corporation. The correct rule applicable, we think, is stated in 6 Fletcher, Cyclopedia Corporations, sec. 3632, in the following language: "The terms of the contract are generally set forth in the certificates of the preferred stock issued to the holders as evidence of their shares, but they are not the only evidence of the contract. They must be read in connection with the provisions of the charter or articles of association, the general law, the by-laws in force at the time the stock was issued. * * * All these enter into and form a part of the contract."

As sustaining their contention that the holder of preferred stock, which by its terms has matured, becomes merely a creditor, appellants cite and rely upon *Westerfield-Bonte Co. v. Burnett,* 176 Ky. 188; *Allen v. Northwestern Mfg. Co.,* 189 Ia. 731; *Keyes v. Blue Bell Medicine Co.,* 34 S. Dak. 297; and *Gunther Grocery Co. v. Hazel,* 179 Ky. 775. These authorities, we think, for the most part do not, when carefully analyzed, sustain the contention made.

In *Westerfield-Bonte Co. v. Burnett, supra,* it is said (p. 197): "The corporation, however, is the property of the stockholders, and if they contract in such a way as to be legally bound to appropriate a portion of the capital to redeem the share of the preferred stockholder, the contract may be enforced, if the enforcement does not affect the collection of the claims of the creditors of the corporation." In that case, all of the preferred stock was matured, and there were ample assets of the corporation to pay all of the preferred stockholders, and also to pay all general creditors of the corporation. It will be observed in that case that the articles of incorporation provided for the retirement and redemption of the preferred stock at all events, and that the corporate assets, regardless of earnings, were liable for such payment, but the rights of stockholders *per se* were not involved.

i *Allen v. Northwestern Mfg. Co., supra,* an action by a holder of matured preferred stock, it was held hat plain-

tiff was entitled to judgment and to share with other creditors of the corporation. However, in that case the so-called preferred stock had no voting power or privilege. The court took the view and decided the case on the theory that, in effect, such a preferred stockholder was merely a creditor and never was a stockholder in reality, and that the issue of stock was only evidence of a loan.

In *Keyes v. Blue Bell Medicine Co., supra,* the court awarded judgment to a preferred stockholder, and held him to be entitled to share with other creditors in the assets of the insolvent corporation. He was awarded judgment, however, not on the strength of his status as a preferred stockholder, but on a contract of guaranty issued by the corporation at the time the stock was issued to the holder.

In the case of *Gunther Grocery Co. v. Hazel, supra,* it was determined that where preferred stock of a corporation, by its terms, pursuant to the articles of incorporation, became due, payable and redeemable by the corporation at its maturity, such stock, after maturity, at least as against the corporation and the owners of the common stock, the rights of no creditors being involved, was but an indebtedness against the company which it was bound to redeem. The opinion in that case goes no further than to hold that all of the matured stock was a debt against the corporation, but there is no intimation that there was any preferred stock which was unmatured. The rights of preferred stockholders, whose stock had matured, as against others, whose stock was unmatured, were not involved.

On the other hand, we find, in *Farrish-Stafford Co. v. Charlotte Cotton Mills,* 157 N. Car. 188, the following rule announced: "A corporation as a rule must treat all shareholders of the same class alike." In the opinion it is further said that a stockholder is not a creditor of the corporation, and that a holder of preferred stock is only a preferred stockholder and must share with others of like class.

In 6 Fletcher, Cyclopedia Corporations, sec. 2630, quoting from an Ohio case, it is said: "The relation of a holder of preferred stock is, in some of its aspects, similar to that

of a creditor, but he is not a creditor save as to dividends after the same are declared. Nor does he sustain a dual relation to the corporation. He is either a stockholder or a creditor; he cannot, by virtue of the same certificate, be both. If the former, he takes a risk in the concerns of the company, not only as to dividends and a proportion of assets on the dissolution of the company, but as to the statutory liability for debts in case the corporation becomes insolvent; if the latter, he takes no interest in the company's affairs, is not concerned in its property, or profits as such, but his whole right is to receive agreed compensation for the use of money he furnishes, and the return of the principal when due." A number of authorities are cited as sustaining the text. We believe the rule above stated to be a sound and correct statement of the law on the subject.

Reverting to section 4 of the articles of incorporation, heretofore quoted, it will be observed that they contemplate that the preferred stock as it matured should be paid out of the earnings of the corporation, and do not contemplate that such stock shall be redemmed by the use of the corporation's capital or by depleting its capital stock to make such redemption, and, further, the provision in said section, relating to the liquidation of the corporation, requires the payment of all outstanding preferred stock as one class, and does not attempt to differentiate and give superior rights to the holders of the earlier maturities over the holders of later maturities of preferred stock.

Applying the rule that the articles of incorporation, as well as the certificate, form a part of the contract, we think a proper construction of those instruments requires the court to hold that the holders of earlier matured stock are entitled to preferential payment only out of the earnings and surplus of the corporation. In the instant case, there are on hand no earnings or surplus. So far as their right to share in the assets of the corporation is concerned, all of the preferred stockholders are in one class. They are co-owners, or may be termed cotenants, of the corporate property and are entitled to share therein *pro rata*.

We next come to a consideration of the question as to whether the record discloses facts sufficient to warrant the appointment of a receiver. Section 8754, Comp. St. 1922, states the causes for which a receiver may be appointed. We quote the first and fifth paragraphs of the section:

"First. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners *or others jointly owning or interested in any property or fund,* on the application of any party to the suit, when the property or fund is in danger of being lost, removed, or materially injured." (Italics ours.)

"Fifth. In all other cases where receivers have heretofore been appointed by the usage of courts of equity."

In 4 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1537, it is said: "The inherent jurisdiction of a court of equity to appoint receivers of corporations, in proper cases, independently of statutory authorization, has been frequently recognized."

In *Bowen v. Bowen-Romer Flour Mills Corporation,* 114 Kan. 95, the court said: "Courts of equity came into existence for the purpose of affording such relief as justice and good conscience required, under the peculiar circumstances of the case. In some jurisdictions, instead of keeping up with social progress, equity has set and hardened. Its potency to meet new conditions has been emasculated, and frequently the caution to be displayed and the limitations to be observed in appointing receivers loom so large that, as the Missouri court has observed, judicial hesitancy degenerates into judicial atrophy. *Cantwell v. Columbia Lead Co.,* 199 Mo. 1. In other jurisdictions a better view is taken, and the phrase, 'by the usages of courts of equity,' means according to the informing spirit of equity heretofore manifested in the appointment of receivers."

In the instant case, from the record it clearly appears that the obligations of the defendant corporation to some of its preferred stockholders have matured, and that it has not the funds with which to satisfy their demands. The only

property that the corporation has consists of the real estate, and the value of this real estate is much less than the corporation owes to its preferred stockholders, including those whose stock is yet to mature. All of the preferred stockholders cannot be paid the par value of their stock alone, much less the unpaid cumulative dividends thereon. Under such circumstances, it seems quite clear that the holders of matured stock should not be required to wait until all of the preferred stock has matured before receiving satisfaction of their demands, or such *pro rata* thereof as they may be entitled to; and, if any of those whose stock is matured were seeking the winding-up of the corporation and distribution of its assets, there could be little, if any, doubt as to their right to such relief. Instead of seeking such relief, however, they are demanding full payment of their stock, with accrued dividends, out of such assets as the corporation has. If their demands are granted, it would leave nothing for the holders of the later maturities of preferred stock. If all the holders of preferred stock are entitled to share ratably in the assets of the corporation, then we find this situation existing: That the holders of the early maturities of preferred stock are seeking by actions at law to enforce full payment of their demands. Concededly, the holders of unmatured stock are not entitled to resist these claims and continue the corporation as a going concern. They are confronted with the proposition of either submitting to the distribution of the assets among the holders of the earlier maturing stock, or consenting to and asking for the dissolution of the corporation and the distribution of its assets ratably among all of the preferred stockholders, and, when confronted with this situation, the holders of the later maturing preferred stock, in the present proceeding, are seeking the dissolution of the corporation and the distribution of its assets ratably among all of the preferred stockholders.

Under the facts disclosed and under the legal principles above announced, it is clear that a case for the application of equitable principles is presented; that the holders of later

maturing preferred stock are, under the circumstances, entitled to a dissolution of the corporation, in order that they may share in its assets, *pro rata,* according to the amount of stock held by each. We hold that sufficient grounds existed for the appointment of a receiver.

Some of the appellants contend that the order appointing a receiver was void and of no force for want of proper notice to those interested. The only notice that was given for the appointment of a receiver was served upon the corporation. No fraud or misconduct of any of the officers of the corporation is charged. The officers, under the circumstances, represented all stockholders. But, aside from this, those who are complaining appeared as interveners in the action, presented their evidence, and were heard upon the question as to the expediency of the appointment of a receiver. They have had their day in court as fully as though they had been given notice prior to the appointment. It would be an idle thing now to reverse the judgment appointing a receiver for the want of notice, when all those who are complaining have submitted their contentions fully to the trial court and have had a hearing upon the question.

We find no reversible error in the record. The judgment is therefore AFFIRMED.