FRANCIS ANDERSON, APPELLEE AND CROSS-APPELLANT, v. CLEMENS MOBILE HOMES, INC., A CORPORATION, AND JERALD E. CLEMENS, INDIVIDUALLY, APPELLANTS AND CROSS-APPELLEES.

333 N.W.2d 900

Filed May 6, 1983. No. 82-382.

James R. Hancock of James R. Hancock, P.C., for appellants.

Rick L. Ediger of Raymond, Olsen, Ediger & Ballew, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

This action was instituted by appellee, Francis Anderson, the minority shareholder of Clemens Mobile Homes, Inc., a Nebraska corporation, against the corporation and its majority and only other shareholder, Jerald E. Clemens, the defendants-appellants. The action sought an accounting and liquidation of the corporation. The trial court decreed that Anderson was a 20-percent owner of the corporation, that as such he was entitled to a judgment of $88,746, and terminated Anderson's ownership in the corporation. The corporation and Clemens appeal from that de-

cree. Anderson cross-appeals, claiming the decree should have included an accounting for additional properties and transactions. We affirm the decree of the trial court and dismiss the cross-appeal.

It is necessary that we first determine the scope of review available to the parties in this case. An action for an accounting may, under one set of circumstances, find its remedy in an action at law and, under another, find it within the jurisdiction of equity. Where the intimate relationships of the parties are involved, an adequate remedy is available only within the equitable jurisdiction of the court. *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982) (finding an action for an accounting between partners to be equitable in nature). We determine that the relationships between the minority and majority shareholders of a two-shareholder corporation are such that an adequate remedy is available only within the equitable jurisdiction of the court. See *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 328 N.E.2d 505 (1975) (holding that stockholders in a close corporation owed one another the same fiduciary duty as that owed by one partner to another in a partnership). Having resolved that this proceeding is equitable in nature, we review the record de novo and reach an independent conclusion without being influenced by the findings of the trial court, except, however, that where credible evidence is in conflict, we must give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. *Craig v. Kile*, 213 Neb. 340, 329 N.W.2d 340 (1983); *Barry v. Wittmersehouse*, 212 Neb. 909, 327 N.W.2d 33 (1982); *Philip G. Johnson & Co. v. Salmen, supra*; *Doyle v. Union Ins. Co.*, 202 Neb. 599, 277 N.W.2d 36 (1979), *appeal as to other issue* 209 Neb. 385, 308 N.W.2d 322 (1981); Neb. Rev. Stat. § 25-1925 (Reissue 1979).

The appellants' seven assignments of error may be summarized as follows: The trial court erred in

(1) failing to give effect to a buy-sell agreement among the shareholders and corporation; (2) permitting Anderson to maintain the action in his own name; (3) determining that Anderson owned 20 percent of the capital stock of the corporation; and (4) determining that the corporation and Clemens personally owed money to Anderson.

The corporation was organized by Clemens as its sole shareholder in April of 1971. Its primary business was the sale of mobile homes, although from time to time other ventures were also undertaken. In the fall of that year Anderson, Clemens' brother-in-law, became an employee and, although no stock certificates were ever issued to him, a one-sixth owner of the corporation. Although Anderson and Clemens' wife served as officers and directors, the evidence establishes that Clemens, as the controlling shareholder, was at all times the corporation's chief operating officer and operated the corporation as though it were his own personal business. Anderson remained an employee of the corporation until May 1973, when he resigned as such. After Anderson resigned his employment he was removed, without his knowledge, as an officer and director.

Appellants' first assignment of error is based upon the buy-sell agreement entered into among the two shareholders and the corporation shortly after Anderson became employed by and invested in the corporation. In *Clemens Mobile Homes, Inc. v. Anderson*, 206 Neb. 58, 291 N.W.2d 238 (1980), we held that the subject agreement became operative during Anderson's lifetime only if he elected to sell his stock. Appellants contend that the institution of the instant action by Anderson triggered operation of the buy-sell agreement. In their answer appellants allege that the corporation ceased functioning as such, had no assets, had its affairs wound up and the creditors discharged, and had gone out of business. Notwithstanding those allegations, Clemens testified the corporation has a bank account and has been

kept alive because of the existence of contingent liabilities. Although one generally may not seek an involuntary dissolution of a corporation to avoid the consequences of a buy-sell agreement, the evidence here establishes that Anderson was forced out of the corporation by Clemens' failure to consider Anderson's interests. Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. See *Tarnow v. Carmichael*, 82 Neb. 1, 116 N.W. 1031 (1908). We conclude that, under the circumstances of this case, the buy-sell agreement does not apply, inasmuch as Clemens abused his position as controlling shareholder and acted in less than good faith in failing to treat the corporation as an entity separate and apart from himself, and that Anderson will receive equitable treatment only through an accounting. The trial court was therefore correct in determining that the buy-sell agreement does not apply.

Nor is there any merit in appellants' claim that this proceeding is in the nature of a derivative suit and as such cannot be maintained by Anderson in his own name. Although the general rule is that a shareholder suing on behalf of a corporation for wrongs done to it must first seek to persuade the officers and directors to bring the action, *Kowalski v. Nebraska-Iowa Packing Co.*, 160 Neb. 609, 71 N.W.2d 147 (1955), he is not required to make such an effort if it would have been unavailing. See *Fisher v. National Mtg. Loan Co.*, 132 Neb. 185, 271 N.W. 433 (1937), *modified in other respects* 133 Neb. 280, 274 N.W. 568 (so holding with respect to the need for a demand upon other shareholders). One cannot seriously contend that Clemens would have caused an action to be brought requiring that he account to the corporation. The trial court was therefore also correct in requiring Clemens and the corporation to

account to Anderson and in terminating Anderson's ownership in the corporation.

We consider next the question of the extent of Anderson's ownership of the corporation. Although there is a conflict in the evidence as to whether and why Anderson's ownership interest changed from his original position as a one-sixth owner, we are persuaded that, as shown by the income tax return for the fiscal year ending March 31, 1973, Anderson became the equitable owner of 20 percent of the corporation.

We come now to a consideration of the rationale for and computation of the amount awarded to Anderson. It has been held that although an officer or a director of a corporation is not necessarily precluded from entering into a separate business because it is in competition with the corporation, his fiduciary relationship to the corporation and its stockholders is such that if he does so he must prove by a preponderance of the evidence that he did so in good faith and did not act in such a manner as to cause or contribute to the injury or damage of the corporation, or deprive it of business; if he fails in this burden of proof, there has been a breach of that fiduciary trust or relationship. *Electronic Development Co. v. Robson*, 148 Neb. 526, 28 N.W.2d 130 (1947); *Frank H. Gibson, Inc. v. Omaha Coffee Co.*, 179 Neb. 169, 137 N.W.2d 701 (1965). The general rule is stated to be that a director or other corporate officer cannot acquire an interest adverse to that of the corporation while acting for the corporation or when dealing individually with third persons. 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 861 (rev. perm. ed. 1975).

Although the burden is ordinarily upon the party seeking an accounting to produce evidence to sustain the accounting, where another is in control of the books and has managed the business, that other is in the position of a trustee and must make a proper accounting. *Baum v. McBride*, 152 Neb. 152,

40 N.W.2d 649 (1950). Here, Clemens had control of the books of the corporation and managed the business. A review of the evidence in accordance with the rules stated above establishes a failure by Clemens to account for a variety of assets and a failure to explain a number of ambiguous entries in the ledgers of the corporation. We further view the evidence as establishing that Clemens realized a personal profit on the sale of land purchased with corporate funds, realized personal profits on business ventures operated through the corporation or financed with corporate funds, charged the corporation with losses on ventures he had effectively treated as his own, borrowed corporate funds for his own use, and paid himself a dividend, all without reference to Anderson's interest in the corporation.

It is true that Clemens, and on occasion other members of his family, personally guaranteed loans in connection with his activities. It is also true, as argued by Clemens, that, generally, no corporate opportunity exists if the corporation is by itself financially unable to undertake such and that a corporate officer has no specific duty to use or pledge his personal funds to enable the corporation to take advantage of a business opportunity. *Miller v. Miller*, 301 Minn. 207, 222 N.W.2d 71 (1974); *A. C. Petters Co. v. St. Cloud Enterprises*, 301 Minn. 261, 222 N.W.2d 83 (1974). It is also true, again as argued by Clemens, that in order to be a corporate opportunity, the business must generally be one of practical advantage to the corporation and must fit into and further an established corporate policy. *Equity Corp. v. Milton, et al.*, 43 Del. Ch. 160, 221 A.2d 494 (1966). One difficulty with applying those principles of law to the instant matter is that it is not at all clear that the corporation would have been unable to take advantage of opportunities usurped by Clemens without the personal guarantees, particularly if Clemens had not routinely borrowed corporate funds for personal expenditures. Moreover, both corpo-

rate personnel and funds were used in the acquisition and operation of various ventures. Under such circumstances as these, Clemens cannot now be heard to complain that the corporation would have been unable to take advantage of the opportunities he saw, nor may he now argue that some opportunities might not have been within established corporate policies.

On his cross-appeal Anderson complains first that the trial court erred in holding he was estopped from claiming that the corporation rather than Clemens owned certain real estate. Although the evidence is far from being free of confusion, we conclude Anderson acquiesced in the leasing of the real estate in question by Clemens and his wife to the corporation; Anderson is thereby now estopped from claiming that the corporation owned it. See *D & J Hatchery, Inc. v. Feeders Elevator, Inc.*, 202 Neb. 69, 274 N.W.2d 138 (1979), restating the general rule that corporate ratification of unauthorized acts may be inferred from inaction. Anderson next complains that Clemens wrongfully terminated the lease with the corporation, as a consequence of which Anderson suffered a loss. Although Anderson attempted to estimate the value of that loss by reference to sales prices and rental payments made by various entities at various times, we agree with the trial court that competent evidence as to the fair value of the lease to the corporation is lacking.

We conclude the trial court correctly computed the accounting among the parties and affirm its decree in all respects.

AFFIRMED.