Paul D. Evans, shareholder, on behalf of D & E Copiers, Inc., a Nebraska corporation, appellee, v. Jon E. Engelhardt and Charles R. Dalton, appellants.

518 N.W.2d 648

Filed July 8, 1994.   No. S-92-1129.

Thom K. Cope, of Bailey, Polsky, Cope, Wood & Knapp, for appellants.

Mark J. Krieger, of Bowman & Krieger, for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Fahrnbruch, Lanphier, and Wright, JJ.

Wright, J.

This is a shareholder action brought by Paul D. Evans against Jon E. Engelhardt and Charles R. Dalton, the remaining two shareholders of D & E Copiers, Inc. (D & E Copiers). Evans alleged that Engelhardt and Dalton paid themselves unreasonable salaries after Evans left the corporation. The district court for Lancaster County held that Evans, on behalf of D & E Copiers, was entitled to a judgment

against Engelhardt and Dalton, jointly and severally, in the amount of $27,640.

## SCOPE OF REVIEW

In an appeal of an equitable action, the appellate court reviews the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994).

## FACTS

In 1986, Engelhardt and Dalton approached Evans with the suggestion that they form a corporation for the servicing of copy machines. In December 1986, 10,000 shares of stock with a par value of $1 per share were issued by the resulting corporation, D & E Copiers. Engelhardt and Dalton each invested $5,000 in D & E Copiers when the stock was issued. Following a meeting of the incorporators on December 10, 1986, Evans was issued a certificate from the corporation for 4,000 shares, which represented 40 percent of the stock in D & E Copiers. Engelhardt and Dalton owned 30 percent of the stock each. Dalton signed the minutes of the incorporators' meeting, which minutes showed that the consideration for Evans' shares was $4,000.

The parties operated the corporation in 1987, 1988, and the first 5 months of 1989. During that time, Evans was responsible for the day-to-day operations, while Engelhardt and Dalton acted primarily as capital investors who contributed their efforts only from time to time. Engelhardt and Dalton worked full time for another corporation known as D & E Technical Service, Inc. (Technical Service), which was a separate corporation involved in servicing and selling typewriters, dictation machines, and other equipment, but not the servicing or selling of copiers.

From 1986 through 1989, D & E Copiers made profit distributions to its shareholders in amounts proportionate to their percentage ownership of the shares: Evans, 40 percent; Dalton, 30 percent; and Engelhardt, 30 percent. D & E Copiers was a subchapter S corporation which passed its retained earnings to its shareholders for inclusion as income on the

individual shareholders' income tax returns. While Evans worked for D & E Copiers, he was the only shareholder who drew a salary.

On May 31, 1989, Evans resigned as president of D & E Copiers and left the employment of the corporation. He formed a corporation called Advanced Office Automation, Inc. (AOA). On June 27, AOA contracted with Engelhardt and Dalton to purchase all but a few of the assets of D & E Copiers. The agreement recited that D & E Copiers was a Nebraska business corporation wholly owned by Engelhardt, Dalton, and Evans, its only shareholders. According to the terms of the agreement, AOA promised to pay $1,000 for used copiers, $16,032 for the parts identified in an exhibit attached to the agreement, $2,721.36 for all Panasonic supplies, and $60,349.41 for all new equipment in D & E Copiers' inventory identified in an attached exhibit. AOA assumed the yearly maintenance contracts held by D & E Copiers. Only a small fraction of the parts inventory, toner, and paper supplies for copiers remained with D & E Copiers.

The agreement further provided that D & E Copiers would continue in business until December 31, 1989, at which time D & E Copiers would begin voluntary dissolution if AOA had made all payments as set forth in the agreement. Following dissolution, the proceeds would be paid to the individual stockholders as their interests appeared. The record is not clear as to when AOA made its final payment under the contract. However, when the payment was made, Engelhardt and Dalton did not take any action to voluntarily dissolve the corporation.

In July 1989, Engelhardt and Dalton voted themselves annual salaries of $15,000 each from D & E Copiers. At the time, both worked full time for Technical Service. After Evans left D & E Copiers, no distributions were made to any of the shareholders except the salaries of Engelhardt and Dalton. Neither Engelhardt nor Dalton could recall the reason for selecting $15,000 per year as the salary. Dalton said it was " 'just a number.' " Neither produced any written documentation or other evidence to substantiate any of the time or effort they claimed to have put forth on behalf of D & E Copiers after July 1989.

When Engelhardt and Dalton were in charge of D & E Copiers, the corporation paid a secretary $5,304 as a salary. During this period, the secretary answered the phone, did typing, and waited on customers for Technical Service, but she was paid exclusively by D & E Copiers.

## ANALYSIS

We first consider the claim by Engelhardt and Dalton that Evans had no standing to bring a derivative action on behalf of D & E Copiers because he was not a shareholder. They rely upon Neb. Rev. Stat. § 21-2018 (Reissue 1991), which provides in part: "No corporation shall be permitted to issue stock except for an equivalent in money paid or labor done, or property actually received and applied to the purpose for which such corporation was created." They argue that since Evans did not give any value for the 4,000 shares issued to him, he did not comply with the requirements of § 21-2018 and, therefore, has no standing to bring a shareholder action.

When D & E Copiers was formed, Evans was issued a certificate for 4,000 shares. The minutes of the meeting of incorporators show that Evans' consideration for the shares of stock was $4,000. Section 21-2018 also provides that "[i]n the absence of fraud in the transaction, the judgment of the board of directors or the stockholders, as the case may be, as to the value of the consideration received for stock shall be conclusive." Here, the corporation was paid for the shares issued, and Evans' shares were validly issued. The fact that the 4,000 shares were issued to Evans instead of to another shareholder does not invalidate Evans' shares of stock.

During the operation of the corporation, Evans was recognized by Engelhardt and Dalton as an active shareholder and participant in the corporation until June 1989. Distributions from the corporation were based on the percentage of stock ownership. The corporation's income tax returns for 1986 through 1990 list Evans as a shareholder, and Evans' shareholder distributions were reported on a schedule K-1. Engelhardt and Dalton notified Evans of shareholders' and directors' meetings, which notice evidenced their acknowledgment of Evans as a shareholder of the corporation.

In *Frasier v. Trans-Western Land Corp.*, 210 Neb. 681, 316 N.W.2d 612 (1982), stockholders disputed whether certain stock issued to the Frasiers was issued without consideration and was therefore void. The trial court found that the stock was void because the Frasiers had not paid an equivalent in money, labor done, or property delivered to the corporation. We reversed the judgment and remanded the cause with directions, holding that the majority stockholders would not be permitted to claim that the Frasiers were not stockholders when the majority stockholders had participated and acquiesced in the manner in which the stock was issued to the Frasiers. We noted that the action was a suit between informed and consenting stockholders as opposed to creditors or uninformed stockholders. The rule that permits a corporation to declare the issuance of stock void is applied in one manner as it relates to creditors of the corporation and in a totally different manner as it relates to stockholders who participated in the issuing of the stock and who now seek to attack the manner in which the stock was issued to a particular stockholder.

Engelhardt and Dalton are not in a position to claim that Evans does not own 4,000 shares of D & E Copiers' stock, and we find that Evans is a shareholder and has standing to bring this action.

Engelhardt and Dalton next claim that the trial court erred in finding they had not proved that their salaries were reasonable. A derivative action which seeks an accounting and the return of money is an equitable action. In an appeal of an equitable action, the appellate court reviews the facts de novo without reference to the findings of fact made by the trial court and reaches an independent conclusion. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994); *Lanphier v. OPPD*, 227 Neb. 241, 417 N.W.2d 17 (1987).

An officer or director of a corporation occupies a fiduciary relation toward the corporation and its stockholders, and is treated by the courts as a trustee. *Rettinger v. Pierpont*, 145 Neb. 161, 15 N.W.2d 393 (1944). The burden of proof is upon the party holding a confidential or fiduciary relationship to establish the fairness, adequacy, or equity of the transaction with the party with whom he holds such relation. *Id.* It was the

burden of Engelhardt and Dalton to show that their salaries were reasonable.

The trial court did not err in finding that Engelhardt and Dalton failed to meet this burden. Engelhardt and Dalton held a board meeting to vote on their salaries after Evans left D & E Copiers. Engelhardt said he worked an average of 30 hours per week for D & E Copiers during the 3-month period after Evans left, although he was also employed full time with Technical Service. He was unable to document any of the time he spent on behalf of D & E Copiers. Engelhardt claimed that during the last 6 months of 1989, he sold supplies, did public relations with customers, completed inventory, and serviced one machine which had not been sold to AOA. He claimed that some of the salary was intended to cover additional work he was required to do after Evans left, but that the salary was also to make up for work Engelhardt had completed in the past.

Dalton did not provide documentation of the time he spent working for D & E Copiers between July 1989 and March 1990. He claimed he worked 20 to 25 hours per week while also working full time for Technical Service. He claimed that he priced the inventory, talked to customers, inspected the inventory, and assisted in preparing lawsuits. The inventorying was completed in June 1989, but Dalton did not begin drawing a salary until July 1989. Dalton claimed that salary was geared to cover activities done after Evans left.

Our review of the record convinces us that the trial court was correct in finding that Engelhardt's and Dalton's testimony as to the time spent working for D & E Copiers was not credible. Where credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Brtek v. Cihal*, 245 Neb. 756, 515 N.W.2d 628 (1994).

Engelhardt and Dalton did not prove the reasonableness of their compensation. Although they claim to have spent 20 to 30 hours each per week working for the corporation, the evidence shows there was little work left to be done because AOA had purchased the inventory and all service contracts from D & E Copiers. By the time Engelhardt and Dalton began drawing a

salary, D & E Copiers was not a large or complex business, and the corporation was to eventually dissolve.

Finally, Engelhardt and Dalton argue that the district court erred in finding they engaged in fraudulent transactions that were detrimental to D & E Copiers. The trial court found that by paying a secretary to complete work for Technical Service with D & E Copiers' funds, Engelhardt and Dalton caused damage to D & E Copiers in the amount of $5,304. We agree.

The trial court's total judgment of $27,640 was based upon $22,336 in salaries paid to Engelhardt and Dalton after Evans left D & E Copiers and $5,304 in salary paid to a secretary after Evans left D & E Copiers. We find no error in the trial court's determination, and we affirm the judgment of the trial court.

AFFIRMED.