GEORGE W. WOODWARD III, INDIVIDUALLY AND ON BEHALF
OF ALL SHAREHOLDERS OF WE AND NW, INC., A NEBRASKA
CORPORATION, APPELLANT, V. NANCY K. ANDERSEN, FORMERLY
KNOWN AS NANCY K. WOODWARD, AND WE AND NW, INC.,
A NEBRASKA CORPORATION, APPELLEES.

627 N.W.2d 742

Filed June 15, 2001.    No. S-99-1430.

James D. Sherrets and Theodore R. Boecker, Jr., of Sherrets & Boecker, for appellant.

Dennis E. Martin and Kevin J. McCoy, of Martin & Martin, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, George W. Woodward III, was married to the appellee Nancy K. Andersen. As part of a divorce settlement, Andersen gave Woodward 245 shares of a corporation and retained 255 shares. Woodward filed suit alleging that before the divorce, Andersen took excess funds from the corporation, and that after the divorce, Andersen mismanaged the corporation and oppressed the shareholders. Woodward sought an accounting, a return of money to the corporation, and dissolution of the corporation. The district court granted partial summary judgment in Andersen's favor for events occurring before the divorce. After a trial, the court denied Woodward relief on his other claims. Woodward appeals. We affirm in part, and in part reverse and remand for further proceedings.

## I. BACKGROUND

Woodward and Andersen were married in 1980. In 1986, Andersen incorporated WE and NW, Inc., for the purpose of acquiring and developing a parcel of land along the Platte River for use as a private campground. Since that time, Andersen has served as president and director of the corporation. Initially, the corporation issued 500 shares of stock to G.W. Egermayer, Jr., and 500 shares to Andersen. The property was conveyed to the corporation in 1988. The campground was named "Woods Landing" and operated by selling memberships as part of a nationwide chain of campgrounds known as Coast-to-Coast.

In 1988, Egermayer redeemed his 500 shares in the corporation. This left Andersen as the sole shareholder in the corporation. Woodward did not own any shares in the corporation, but testified that he had an interest in the corporation due to his marriage to Andersen and has contended that Andersen held shares in trust for him. Both parties testified that they took active roles in the management and development of the campground.

Woodward testified that he never received a salary from the corporation and that when he wanted to be paid, he asked Andersen for money. In addition, the couple used revenue from the corporation to pay a majority of their bills and to purchase items. Woodward testified that "millions" were taken out of the corporation, stating that an average of $30,000 to $60,000 was taken out per month and that up to $300,000 might be taken out in a month in order to buy things such as a farmhouse, jewelry, or a Jaguar convertible. Andersen testified that she believed less than $20,000 per month was taken out and that there were probably instances where over $200,000 was taken out, but not over $250,000.

### 1. Prior Divorce Proceedings and Property Settlement Agreement

Andersen filed for divorce in June 1992. A temporary restraining order was issued precluding any transfers from the corporation outside of the ordinary course of business. Woodward then began to claim that Andersen was wrongfully withdrawing money from the corporation. At a deposition taken in November, Woodward stated that he was investigating

amounts Andersen had received from the corporation and indicated that there were payments made outside of the ordinary course of business. In his deposition, Woodward also stated that he was concerned about where money from the corporation was going and that he wanted an accounting. The record contains evidence indicating that money withdrawn by Andersen in 1992 was used to finance purchases for Woodward and to pay to him $30,000 per month under a temporary support order in the divorce proceedings.

The record contains letters exchanged between Woodward's and Andersen's attorneys during the divorce proceedings. These letters indicate that there was considerable disagreement over the amount of information that was provided through discovery regarding the corporation. The record shows, however, that in response to a motion to compel, Andersen made the financial records of the corporation available for review and inspection by Woodward. A letter from Woodward's attorney dated February 1, 1993, states that he hired an accountant to perform a review of all corporate records at the campground office. The record indicates that Andersen did not allow such an audit to be performed. Instead, the record contains a letter dated March 8, 1993, stating that such a request was too broad and stating that a document request should be provided. A letter dated March 11, 1993, indicates that a settlement was then reached between the parties.

On March 29, 1993, a shareholder agreement was executed which was incorporated into the divorce decree. Under the decree, Andersen transferred 245 shares of her 500 shares to Woodward. The decree states that "[Woodward] acknowledges that [Andersen] is not indebted to W.E. & N.W., Inc. nor does W.E. & N.W., Inc. have any claims against [Andersen]." The agreement indemnifies both Woodward and Andersen for all liabilities asserted against them as past or present officers, directors, or employees of the corporation. The agreement provides that to the extent not indemnified by the corporation, the parties agreed to bear in equal shares any liabilities that arose by virtue of any distribution, compensation payment, cash transfer, or other property transfer from the corporation to any person at any time or any liabilities by virtue of Andersen's or Woodward's actions or admissions as a shareholder, officer, or director of the corporation. The

parties also agreed to indemnify each other against liability transpiring after entry of the decree. The agreement also has provisions for indemnification between the parties. The record does not contain evidence of a resolution or provision allowing the corporation to indemnify Andersen for attorney fees.

The agreement states that it was designed in part to provide for past and future liabilities and to place certain restrictions on Andersen's control of the corporation. Woodward contends that he and Andersen agreed that he would be made an officer of the corporation. The agreement, however, does not include such a provision. After the divorce, Woodward was made an officer of the corporation, but was later removed.

## 2. TRIAL

As noted, the trial court granted summary judgment against Woodward's claims occurring before the divorce. At trial, on the claims after the divorce concerning the dissolution of the corporation and the accounting action, Woodward attempted to provide evidence of an oral agreement between himself and Andersen providing that he would be made an officer and director of the corporation after March 1993. Andersen's attorney objected on the basis that the parol evidence rule barred testimony of any agreements that were not ultimately included in the shareholder agreement. The trial court did not allow the testimony on the basis that Woodward did not plead that he was wrongfully induced to sign the shareholder agreement. Woodward then made a motion to amend his petition, which the district court denied. The articles of incorporation dealing with officers and directors state that when the shares of the corporation are owned by either one or two stockholders, the number of directors may be less than three but not less than the number of shareholders.

Andersen presented evidence that after the divorce, Woodward encouraged campground members to withhold their dues and he broke into the campground office and took some documents. Woodward denies these allegations and contends that an anonymous camper called him and told him that missing documents were on the clubhouse steps. Woodward states that he then picked up the documents and gave them to his attorney.

The record reflects a litany of charges and countercharges between the parties. Woodward testified that Andersen was not holding annual shareholders' meetings. Andersen testified that one meeting was held but that it "didn't work," that she and Woodward could not agree, and that they could not be in the same room together. At trial, Woodward testified that he believed the campground was being poorly run. Andersen disagrees.

In 1996, Woodward hired a certified fraud examiner to examine the books of the corporation. The examiner concluded that Andersen took $423,400 from the corporation in 1992, mostly through telephone transactions. The record contains a short affidavit from the examiner which does not provide any detailed information regarding the examiner's experience in conducting fraud examinations. The examiner did not testify at trial.

In December 1996, Woodward filed suit individually and on behalf of the shareholders alleging that Andersen received excessive compensation, withdrawals, and benefits from the corporation before the divorce. Woodward alleged that he was unable to discover the extent and nature of the excessive payments until November and December 1996. He also alleged that after the divorce, Andersen acted in an oppressive and fraudulent manner with respect to Woodward and the corporation in breach of her fiduciary duties to both. Woodward alleged that he was improperly ousted as an officer and director of the corporation, that Andersen allowed her mother and a sibling to run the corporation, and that he was denied access to records. Woodward further alleged that Andersen received excessive payments from the corporation and that the corporation's books show a loan made to Woodward and a dividend resolution that never occurred. Finally, under a section labeled "Dissolution," Woodward alleged that Andersen had mismanaged the corporation, failed to keep Woodward informed of business decisions, and was in violation of the shareholder agreement by receiving a salary that was ordered by the Internal Revenue Service. Woodward sought an accounting, money judgment on behalf of the corporation, removal of the loan and the dividend resolution from the books, attorney fees, and dissolution of the corporation. In the alternative, Woodward alleges that Andersen should

be removed as officer and director or that Woodward should be reinstated as an officer or director.

The district court granted Andersen's motion for partial summary judgment for claims arising before the divorce decree, finding that all matters in dispute occurring before the decree had been settled in the divorce action. At the hearing on the motion for summary judgment, Woodward sought a continuance on the grounds that a motion to compel remained outstanding. The outstanding motion to compel does not appear in the record. The district court did not allow a continuance.

A trial was later held on the remaining claims. The district court determined that Andersen's actions did not diminish the value of the corporation, that Andersen had provided Woodward with all the information she was required to provide, and that none of her actions rose to the level of a breach of the shareholder agreement. The district court then concluded that Woodward had failed to meet his burden of proof on all claims and dismissed Woodward's operative petition with prejudice. Woodward appeals.

## II. ASSIGNMENTS OF ERROR

Woodward assigns, rephrased, that the district court erred in (1) entering partial summary judgment on his claims for actions occurring before March 29, 1993; (2) dismissing his operative petition with prejudice; (3) overruling his motion for a new trial; (4) failing to grant his motion for a continuance; (5) failing to allow him to amend his petition; and (6) failing to award attorney fees. Woodward also assigns that the district court erred "in its evidentiary rulings at trial."

## III. STANDARD OF REVIEW

A derivative action which seeks an accounting and the return of money is an equitable action. *Evans v. Engelhardt*, 246 Neb. 323, 518 N.W.2d 648 (1994). See *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 333 N.W.2d 900 (1983). An action seeking corporate dissolution is also an equitable action. See, *Ammon v. Cushman Motor Works*, 128 Neb. 357, 258 N.W. 649 (1935); *Miller v. M. E. Smith Building Co.*, 118 Neb. 5, 223 N.W. 277 (1929). See, generally, *Anderson v. Clemens Mobile Homes, supra.*

■ In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000); *Anderson v. Cumpston*, 258 Neb. 891, 606 N.W.2d 817 (2000).

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 619 N.W.2d 432 (2000).

■ The applicability of the doctrines of collateral estoppel and res judicata is a question of law. *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Riggs v. Riggs, ante* p. 344, 622 N.W.2d 861 (2001); *Jones v. Paulson, ante* p. 327, 622 N.W.2d 857 (2001).

## IV. ANALYSIS

### 1. COLLATERAL ESTOPPEL

Woodward argues that the district court erred in determining that claims based on actions taken by Andersen before March 29, 1993, were barred by res judicata or collateral estoppel. Woodward argues that he did not know of withdrawals made by Andersen until after November or December 1996 and that he was unable to raise the issue of improper withdrawals at the time of the divorce because he was not a shareholder.

■ The doctrine of res judicata provides that a final judgment on the merits is conclusive upon the parties in any later litigation involving the same cause of action. *In re Estate of Wagner, supra.* Under collateral estoppel, when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future

lawsuit. *Id.* There are four conditions that must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.*; *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995). We analyze this case under the doctrine of collateral estoppel.

Woodward argues that he was unable to raise issues regarding withdrawals Andersen made from the corporation before the divorce. The corporation, however, was marital property subject to distribution. In order to equitably distribute the property, a necessary determination involved the value of the corporation. Any claim that Woodward or the corporation had against Andersen at the time of the divorce would affect the valuation of the corporation, bringing directly into issue whether Andersen improperly withdrew money from the corporation. Woodward and Andersen entered into a settlement agreement under which the property was distributed and the parties agreed that Andersen was not indebted to the corporation and that the corporation did not have any claims against Andersen. This agreement was made a part of the divorce decree that was ultimately approved by the court, creating a final judgment on the merits. By logical implication, this judgment included a determination that there were no existing claims by the corporation against Andersen and decided any issues Woodward had regarding the valuation of the corporation. See *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380 (N.D. 1992). See, generally, *Eggland v. Eggland*, 240 Neb. 393, 482 N.W.2d 245 (1992).

Woodward argues that he lacked the opportunity to fully and fairly litigate issues regarding withdrawals Andersen made from the corporation because Andersen hid withdrawals from him. He claims that he relied on a statement by Andersen that money which was taken out of the corporation in the form of a bonus was deposited back into the corporation. In support of his argument, Woodward relies on *Larkin v. Ethicon, Inc.*, 251 Neb. 169, 556 N.W.2d 44 (1996).

In *Larkin*, we reversed a summary judgment when a plaintiff was provided with incorrect information during discovery. Without the cooperation of the defendant, the plaintiff in *Larkin* had no means by which to discover the information. In this case, however, the record shows that Woodward expressed concerns about withdrawals Andersen made from the corporation and that he brought numerous discovery motions. Woodward then sought to hire an accountant to thoroughly examine the books, something Andersen resisted. But instead of making a motion to compel or attempting to pursue additional discovery into transactions made by Andersen, Woodward chose to enter into a settlement agreement. In the agreement, he stipulated that the corporation had no claims against Andersen. Therefore, Woodward had the opportunity to investigate the issue further and either go forward with litigation or structure the settlement accordingly. Unlike *Larkin*, where a court entered summary judgment against the plaintiff's wishes, Woodward freely chose to discontinue investigating his concerns and enter into a settlement agreement. Further, Woodward did not later seek to set aside the decree based on an allegation of fraud. See *Grant Fritzsche Enterprises v. Fritzsche*, 107 Ohio App. 3d 23, 667 N.E.2d 1004 (1995).

We determine that Woodward was collaterally estopped from relitigating issues concerning withdrawals Andersen made from the corporation before March 29, 1993. These issues were conclusively decided as part of the divorce action. Accordingly, the district court was correct in sustaining Andersen's motion for partial summary judgment.

## 2. DISSOLUTION AND ACCOUNTING

Woodward next argues that the district court erred in failing to dissolve the corporation. Woodward argues that after March 29, 1993, Andersen breached her fiduciary duties and engaged in oppressive conduct. In particular, Woodward alleges that Andersen mismanaged the corporation, failed to hold shareholders' meetings, failed to retain him as an officer of the corporation, and wrongfully withdrew funds from the corporation in order to pay attorney fees. Woodward argues that the corporation is deadlocked and must be dissolved.

The district court concluded that Andersen had the authority and discretion to operate the corporation without consulting Woodward, that she had done nothing to diminish the value of the corporation, and that she had done nothing that rose to the level of violating the shareholder agreement. The district court found Andersen's assertions of unreasonable conduct on the part of Woodward to be "quite credible" and were corroborated by Woodward's vague responses at trial. The court then concluded that Woodward had failed to meet his burden of proof on all claims.

### (a) Burden of Proof

The district court assumed that Woodward bore the entire burden of proof. An officer or director of a corporation, however, occupies a fiduciary relation toward the corporation and its stockholders, and is treated by the courts as a trustee. *Evans v. Engelhardt*, 246 Neb. 323, 518 N.W.2d 648 (1994). Although the burden is ordinarily upon the party seeking an accounting to produce evidence to sustain the accounting, when another person is in control of the books and has managed the business, that other person is in the position of a trustee and must make a proper accounting. *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 333 N.W.2d 900 (1983). The burden of proof is upon a party holding a confidential or fiduciary relation to establish the fairness, adequacy, and equity of a transaction with the party with whom he or she holds such relation. *Rettinger v. Pierpont*, 145 Neb. 161, 15 N.W.2d 393 (1944).

In this case, once a fiduciary relationship between Woodward and Andersen was established and evidence was presented that certain transactions existed that allegedly breached a fiduciary duty, the burden shifted to Andersen to prove the fairness of those transactions. See, *Coduti v. Hellwig*, 127 Ill. App. 3d 279, 469 N.E.2d 220, 82 Ill. Dec. 686 (1984), *overruled on other grounds, Schirmer v. Bear*, 174 Ill. 2d 63, 672 N.E.2d 1171, 220 Ill. Dec. 159 (1996). In a claim for dissolution of a corporation, however, the burden of proof remains on the party seeking the dissolution. *Id.*; *Churchman v. Kehr*, 836 S.W.2d 473 (Mo. App. 1992). See *Hockenberger v. Curry*, 191 Neb. 404, 215 N.W.2d 627 (1974). Woodward had the burden to prove that the corporation should be dissolved.

(b) Dissolution

The Business Corporation Act provides:

[T]he court may dissolve a corporation:

. . . .

(2)(a) In a proceeding by a shareholder if it is established that:

(i) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally because of the deadlock;

(ii) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;

(iii) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired; or

(iv) The corporate assets are being misapplied or wasted.

Neb. Rev. Stat. § 21-20,162 (Cum. Supp. 2000). The meaning of the term "deadlocked" within the context of § 21-20,162 is a corporation which, because of decision or indecision of the stockholders, cannot perform its corporate powers. *Kollbaum v. K & K Chevrolet, Inc.*, 196 Neb. 555, 244 N.W.2d 173 (1976).

Although the Business Corporation Act has given to the courts the power to relieve minority shareholders from oppressive acts of the majority, the remedy of dissolution and liquidation is so drastic that it must be invoked with extreme caution. *Hockenberger v. Curry, supra.* We have stated that the ends of justice would not be served by too broad an application of the statute, for that would merely eliminate one evil by the substitution of a greater one—oppression of the majority by the minority. *Id.*

We agree with the district court that Woodward has failed to meet his burden of proof. Woodward is correct that the articles of incorporation state that the corporation must have at least two directors when there are two shareholders. However, nothing in the articles of incorporation dictates that a shareholder must be the additional officer or director. Nothing in the shareholder

agreement or the articles of incorporation entitles Woodward to act as an officer or director of the corporation. Woodward is also correct that Andersen has failed to properly hold shareholders' meetings. We determine, however, that Andersen's failure to appoint a second director and to hold shareholders' meetings are insufficient reasons to dissolve the corporation. In this case, Woodward has failed to show how Andersen's actions affect the corporation in a manner that would allow dissolution under § 21-20,162. Further, the Business Corporation Act provides other remedies for Woodward's complaints. See, e.g., Neb. Rev. Stat. § 21-2053 (Reissue 1997).

Although Woodward may disagree with certain management decisions made by Andersen, it is Andersen who is the majority stockholder, officer, and director of the corporation. Absent a showing that the factors enumerated in § 21-20,162 apply, a minority shareholder's disagreement with management's decisions or the shareholder's dislike of another shareholder does not create a corporate deadlock. Woodward has failed to show that the corporation cannot perform its corporate powers. We also agree with the district court that the record shows that the corporation has made a profit and that Woodward has failed to show how corporate assets are being misapplied or wasted. We conclude that the district court was correct in determining that Woodward failed to meet his burden of proof and in refusing to dissolve the corporation.

### (c) Accounting

In alleging a breach of fiduciary duty and seeking an accounting, Woodward argues that Andersen improperly withdrew approximately $2,000 from the corporation to pay attorney fees before trial of this case. Any withdrawals made after trial are not the subject of this action. Andersen argues that she could use corporate funds to pay attorney fees under the shareholder agreement. The shareholder agreement, however, only provides for indemnification between Andersen and Woodward. The agreement is silent regarding indemnification by the corporation to Andersen. Therefore, the agreement does not provide for indemnification by the corporation to Andersen.

Accordingly, Woodward is entitled to an accounting of indemnification of expenses Andersen received before trial. If Andersen cannot show that she was entitled to an advance for expenses, she must reimburse the corporation for the improperly received indemnification.

We have reviewed Woodward's remaining assignments of error and determine they have no merit.

## V. CONCLUSION

We determine that the district court was correct in sustaining Andersen's motion for partial summary judgment on the basis of collateral estoppel. We also determine that the district court was correct in finding that Woodward failed to meet his burden of proof when seeking a dissolution of the corporation and in his other claims. We further conclude that the district court did not err in overruling Woodward's motions for a continuance and directed verdict and did not err in the evidentiary rulings that Woodward assigns as error. We do determine, however, that Woodward is entitled to an accounting of money Andersen withdrew from the corporation to pay attorney fees before trial. Accordingly, we reverse, and remand for further proceedings on that issue only.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

McCORMACK, J., not participating.